IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RECEIVED
2006 MAR -2  A 10: 07

JEFFERY BAKER JR,

    Petitioner,

vs.

RUSSELL THOMAS, And
TROY KING,
Alabama Attorney General

    Respondents,

CASE NO. 2:06CV201-mef

## PETITIONER'S GROUNDS AND MEMORANDUM OF LAW
## IN SUPPORT OF PETITION WRIT FOR HABEAS CORPUS

Comes Now Petitioner, Jeffery Baker Jr, Pro-se, unlearned in law, subject to error, respectfully, and in good faith, pursuant to and in accordance with 28 U.S.C.A §2254, petitions this Honorable Court for Relief and submits good grounds with supporting Memorandum of law in support thereof, and present the following:

### INTRODUCTION

Petitioner raised Eight (08) principal issues in his sworn motion for new trial and in list of issues to the Alabama Appellate Courts after the "new appointed Counsel" submitted his brief tracing the language of _Anders v. California,_ 386 U. S. 738 S. Ct. (1967). In support of the Petition for Writ of Habeas Corpus relief, petitioner shows he is denied his First, Sixth, Eight, and Fourteenth Amendment Rights to the United States Constitution. All issues presented are timely submitted for consideration in petitioner's "sworn Motion for New Trial" (CR. 551-558); in the petitioner's list of issues ordered by the Court of Criminal Appeals and presented to the Alabama Supreme Court in

Petitioner's Writ for Certiorari. Petitioner now seeks Federal review of the state court decision(s).

## STATEMENT OF THE CASE

After a deadlocked jury, in which petitioner was forced to represent himself; a mistrial was declared, (see USDCMDA No. 2:06-CV-61-ID). Petitioner was retried February 28, 2005, with an appointed counsel and was convicted under Ala. Code §13A-11-8-(a) for harassment, Pike County Circuit Court Case No. CC-2003-248. Petitioner was sentenced to 90 days and fines, fees, and costs tallying to over $1100.00 and two years probation, according to the memorandum opinion issued by the Court of Criminal Appeals August 16, 2005, (attached). Petitioner appealed the convictions and sentence to the Court of Criminal Appeals and moved for appointment of a new counsel on appeal (CR. 537-539). The petitioner filed pro-se motions to modify sentencing and/or reconsideration and a timely sworn motion for new trial prior to the appointment of the new Counsel (CR. 549-558). Petitioner timely submitted the Reporter's Transcript Order Criminal (form ARAP-1C) on the Court Reporter, Mrs. Andrea Martin, and on all parties to the appeal below (CR. 559-560). Appointed counsel was allowed to withdraw and the Court of Criminal Appeals appointed Mr. Douglas C. Freeman, to represent petitioner in the appeal April 13, 2005. On or about June 14, 2005, counsel submitted a brief tracing the language of <u>Anders v. California, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d. 493 (1967)</u>; in which the "new appellate counsel" asserted he "could not find any arguable issues preserved in the lower court." On July 15, 2005, The Court ordered petitioner to list each and every issue the petitioner wanted considered by the Court on or before July 20, 2005, On August 19, 2005, the court issued a Memorandum Opinion adopting

2

appointed counsel's *Anders* Brief. Petitioner filed Petition for Rehearing with supporting arguments on September 7, 2005. The Court of criminal appeals denied the Rehearing Petition October 7, 2005 (attached). Petitioner timely sought review of the issues in the Alabama Supreme Court. The Supreme Court denied petitioner's Certiorari and the Certificate of Judgment issued (attached). Petitioner is required to surrender himself within 15 days from date of the issuance of the Certificate of Judgment to serve the sentence imposed by the trial court March 1, 2005, Ala. Code 12-22-244.

## STATEMENT OF FACTS

On September 6, 2002, your petitioner lawfully appeared at the pike county courthouse whereat petitioner discovered the front entrance doors were locked and all county, state, and federal offices were closed due to a party at the rear of the Courthouse. Petitioner appeared at the rear of the Courthouse and sought to participate in what petitioner reasonably believed was a public party. Upon receiving clearance to participate, and/or invited to a sandwich and drink, petitioner attempted to collect food from a grill. Without any indication, a Pike County sheriff deputy committed a battery to petitioner's persons resulting in injuries to petitioner's hand and the infliction of severe emotional distress. Petitioner requested that the deputy not trespass again and proceeded to retrieve food from the grill. The deputy again used unlawful force against petitioner's persons. At the same time, petitioner body nudged the deputy away from his personal space and again demanded he not trespass again. In the course of this second exchange, food inadvertently fell on the ground, purportedly "breaking into three pieces." Petitioner sought criminal charges against the deputy for the battery against his persons and the other verbal threats made against petitioner's personal safety by law enforcement officers

3

on the scene. Petitioner pursued the issue(s), under clearly established statutory law however, petitioner was denied his constitutional and state law rights by the Pike County sheriff, Russell Thomas and magistrate, Brenda M. Peacock. Three days later, after petitioner filed complaint with the Pike County District Attorney, the offending sheriff deputy, and a Pike County probate clerk, instituted complaints against petitioner pursuant to Ala. Code §§13A-7-23 and §13A-8-11(a).

All judges of the 12th judicial circuit of Alabama recused themselves and the Alabama Supreme Court reassigned to the case to presiding Judge Larry K. Anderson of the 20th judicial circuit of Alabama. The pike county District Attorney, Mark E. Fuller withdrew himself and all his staff, after instituting the prosecution. The Alabama Attorney General appointed the Mr. Boyd Whigham, District Attorney from the 3rd judicial Circuit as the special prosecutor in the misdemeanor case. Petitioner sought removal to United States District Court for the Middle District of Alabama. The Removal Petition was denied (CR. 456-463), (USMDA 2:04-CV-1085-T), (See also <u>Alabama v. Baker, 222 F. Supp. 2d 1296 (M.D. Ala. 2002)</u>. Petitioner was retried February 28, 2005, and convicted of Harassment pursuant to 13A-11-8 (a). [1] The first trial in this case resulted in a hung jury and a mistrial declared, (See also USDCMDA 2:06CV-61-ID). After the successive withdrawals of several Pike County bar members, Mr. J. Carlton Taylor of Montgomery, Alabama filed notice of acceptance January 4, 2005 (CR. 479-480). The appointed Attorney failed to meet with or advance a defense strategy; petitioner therefore filed a letter in the court file outlining his defense strategy to his appointed counsel (CR. 487-489). Petitioner was convicted and sentenced to 90 days

---

[1] Case number 2:06-CV-61-ID, <u>Baker v. Russell Thomas, et, al,</u> is pending Habeas Corpus review in the United States District Court Middle District of Alabama.

4

suspended with 30 days hard labor in Pike County jail and petitioner appealed the conviction and sentence, pro-se (CR. 526-527). The Court of Criminal Appeals and the Alabama Supreme Court rejected all petitioners' pro-se issues; the petitioner having exhausted state remedies, the case is now full-grown for Review in the Federal Court(s). Petitioner advances the following grounds for Federal Review, 28 U. S. C. A. 2254.

## GROUND ONE

According to *Anders v. California*, 386 U.S.738, S.Ct. 1396, 18 L. Ed. 2d 493 (1967) the first requirement of an appointed counsel is a "conscientious examination of the entire record below." The State courts decision to uphold appointed counsel's *Anders* brief without first requiring the entire record below is contrary to clearly established Federal law, as determined by the Supreme Court of the united States or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States.

Our Federal Appeals Court held in U.S. v. Osorio-Cadavid, 955 F. 2d 686 (11th Cir. 1992) "Appellate counsel did not fulfill obligation to review entire transcript for plain error prior to filling *Anders* brief." In Hardy v. United States, 375 U.S. 277 84 S.Ct. 424, 11 L. Ed. 2nd 331 (1964), the Court reasoned that new counsel could not faithfully discharge the obligations that the court had placed on him or her unless he or she could read the entire transcript. See Also United States v. Gregory, 472 F. 2d 484, 486 (Fifth Cir. 1973), "The [Supreme] Court stressed that the duty of representation of an appellate lawyer included the duty to search out plain error, and that nothing less than a complete transcript would suffice to accomplish this." In U.S. v. Clark, 944 F. 2d 803 (11 Cir. 1991), the Court held, "without complete record court of appeals could not make critical

determination whether appeal was sufficiently frivolous." Likewise, your petitioner filed his Reporters Transcript Order (ARAP form 1C) that requested argument of counsel(s), (CR. 559-560). Appellate counsel *Anders* brief lacks in a conscientious examination of the entire record below as required by clearly established federal law, *Anders v. California*. In making its critical determination, the state appellate courts used an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States in concluding, "we have not found any error that requires reversal." Furthermore, even after appointed counsel submitted his *Anders* brief, Petitioner sought supplementation and/or amendments to the record and has since filed objections to the Court's denial. Clearly, argument of counsel were ordered by petitioner in time to secure inclusion, and appointed counsel, Mr. Douglas Freeman, was at least obligated, pursuant to clearly established Federal law; to have the record supplemented and/or the corrected prior to his *Anders* brief. In as much as the "new appellate Counsel, Mr. Douglas C. Freeman submitted motion to withdraw pursuant to Ander v. California, 386 U.S. 738 (1967), petitioner notes Counsel's *Anders* brief exhibits sarcastic, condescending, and debasing content directed towards the petitioner, It is clear, he is not the zealous advocate contemplated by the Alabama Rules of Appellant Procedure and the Sixth and Fourteenth Amendments to the United States Constitution. As a matter of right and law, this Honorable Court is required to remand the matter for the supplementation and correction of the record before making any such determination whether error(s) exists. At the bare minimum, petitioner is entitled to the complete record ordered on appeal. As a matter of established law, the record must at least reflect on the propriety of

the incomplete appellate record ordered by petitioner and the propriety of appointed counsel's *Anders* obligation(s) therewith.

## GROUND TWO

The state courts determination that there was sufficient evidence to sustain petitioner's conviction is contrary to clearly established Federal Law. In a federal habeas corpus proceeding in which a state prisoner challenges sufficiency of evidence supporting the conviction, prisoner is entitled to a determination whether the record evidence could support a finding of guilt beyond a reasonable doubt, 28 USCA 2254, *Moore v. Duckworth*, 443 U.S. 713, 99 S. Ct. 3088, 61 L. Ed. 2d 865 (1979). No reasonable jury could have found petitioner guilty beyond reasonable doubt pursuant to the Ala. Code §13A-8-11 (a) on the record evidence here presented. The constitutional requirement prohibiting criminal conviction of any person except upon proof of guilt beyond a reasonable doubt can be effectuated only if a federal habeas corpus court, in assessing the sufficiency of evidence to support a state court conviction, inquires whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found essential elements of crime beyond reasonable doubt, Pilon v. Bordenkrcher, 444 U. S. 1, 100 S. Ct. 7, 62 L. Ed. 2d 1 (1979).

The charge of harassment §13A-8-11(a) requires  specific intent to harass, annoy, or alarm, in this case, a Pike County Sheriff Deputy. Petitioner was injured as a result of unlawful physical contact "first" initiated by the deputy and without any provocation; the victim initiated unlawful contact, he is the aggressor. Petitioner's Motion for a new trial is sufficient to preserve the issue, even if no specific objection is made at trial" (CR. 549-560). However, here, petitioner moved for a Judgment of acquittal at the close of the

states case, and at the close of the evidence, (See also CR. 361, 366-370). In addition, petitioner's motion for New Trial attacks the sufficiency of the evidence (CR. 549-560). The sufficiency of the evidence issue is preserved in petitioner's list of issues submitted the Court of Criminal Appeal and in his Petition for Writ of Certiorari to the State supreme court. In Ex parte Roberts, 662 So. 2d 229, (Ala. 1995), the Alabama Supreme Court held: "When state fails to present sufficient proof of all elements of offense, conviction must be reversed and judgment for defendant must be rendered." Here, the sufficiency issue only required appellate counsel to pose one simple question. Can the alleged victim who commits "repeated batteries" after repeatedly being warned, be harassed, annoyed, or alarmed, pursuant to Ala. Code §13A-11-8 (a) (1) (a) when he is the aggressor. Stated another way, may your petitioner, harass, annoy, or alarm his initial aggressor by repeatedly warning the aggressor to cease and desist his unlawful contact and use a degree of force equal to or less than that being used for that purpose violate Ala. Code §13A-11-8 (a). Otherwise, does a lawful citizen of the United States has a reasonable expectation to appear at public's courthouse as an invitee and not be harassed, menaced, and physically and verbally assaulted by law enforcement officers? The question is clearly preserved by petitioner in his Sworn Motion for New Trial, his List of issues, and in his petition for writ of certiorari to the Alabama Supreme Court. Consequently, if the answer is yes, it would appear appointed counsel's *Anders* brief is a viable dilatory tact through which the written decision on the sufficiency issue herein lies in abatement in the Alabama Courts.

Because the is preserved, the conviction is contrary to the Fourteenth Amendment, and clearly established Federal law or is an unreasonable application of clearly

8

established Federal law, as determined by the United States Supreme Court, the case is due Federal review. Petitioner is entitled to a written determination whether the record evidence could support a finding of guilt beyond a reasonable doubt under the facts and circumstances as are here complained of, 28 U.S.C. A. 2254, *Moore v. Duckworth,* 443 U.S. 713, 99 S. Ct. 3088, 61 L. Ed. 2d 865 (1979).

## GROUND THREE

The Verdict Is Contrary To Law, Petitioner's sworn motion for new trial is sufficiently specific and squarely presents the trial court with the issue. Additionally, the issue was presented in petitioner's list of issues and argument in support thereof in Court of Criminal appeals and in petitioner's petition for writ of certiorari. Petitioner unwaveringly maintains the charged offense herein perfected is a fraud and an affront to the integrity of the court and criminal justice in Alabama. Furthermore, the *Anders* brief is not based in a conscientious decision to argue the issue, but in preserving the status quo. Otherwise, if as alleged, and if the petitioner was publicly cursing, throwing food on the ground causing it to "break into three pieces," raising hell, and pushed a seasoned law enforcement officer in the chest with both hand causing him to fall against a table 12 feet away and was not immediately apprehended by the law enforcement officers on the scene, the verdict is clearly contrary to law. Remarkably, the charges against your petitioner only arose after your petitioner sought criminal charges against the victim and his confederates. Petitioner's actions is consistent with innocence while the actions of the victim and his confederates in consistent with guilt, petitioner shows the following:

In order to find petitioner guilty of the harassment, Ala. Code 1975 §13A-8-11(a)(1)(a) the specific intent to harass, annoy, or alarm the alleged victim is required.

There is no evidence in the record that shows petitioner had even exchanged words with the alleged victim prior to the unlawful battery to petitioner's persons. The record shows Defense exhibit #1, (CR. 7-9), which was "lawfully admitted into the evidence" (R. 90) which shows the victim to be the initial aggressor; the victim initiated unlawful physical contact with petitioner that resulted in injuries to petitioner's person. On cross and re-cross, the alleged victim testified:

" I don't think I testified I gently lifted his arm. I don't remember my exact words, but I said I pushed his arm". . . (R.84-102, 107-112).

Furthermore, the victim's testimony shows the following occurred prior to petitioner's reaction to the battery to his persons:

Q.    "And according to your statement, after you pushed Mr. Baker's arm the second time, he said, "Don't shove me," and that's when he shoved you back---

A.    Yeah.

Q.    --or pushed you back?

A.    I'm not sure if he said don't shove me or don't touch me. . .

Q. "And you leave no room for the possibility that Mr. Baker was feeling threatened by you pushing him"

A.    I have no idea what Mr. Baker was feeling.

Q.    But you can't exclude the possibility, right?

A.    I can't tell you what he was feeling. (R. 92).

Petitioner testified:

Q.    And when you walked over to the grill, what did you see?

A.    I saw sausage, steaks, looked like pork chops, and maybe even hamburgers on there.

Q.    And at that point, what did you do?

10

A.    I just reached for the tools, the fork or the tools, whatever it was. And from behind—I was kind of sideways, and from behind, Mr. Williamson (the victim) assaulted me.

Q.    By that, what do you mean?

A.    He grabbed me and tried to manhandle me.

As petitioner's examination continues the record testimony shows, when petitioner went to "that grill, was it your intention to have any dealings with Bob Williamson (the victim), Petitioner answered:

A.    "None whatsoever. I was under the impression that I was welcome to have the food. I was under the impression that I could participate fully, but for Mr. Dennis Riley and Mr. Bob Williamson.

Q.    Okay. This steak that you say you were reaching for, did you at that time know that steak belonged to someone else?

A.    No, Sir. No, Sir.

Q.    Mr. Williamson said you can't have that steak or don't touch my grill, did you believe he had the authority to tell you that?

A.    I didn't believe he had the authority to tell me that; furthermore, he did not tell me that. He told me, after he had initiated physical contact with me, not to touch the grill. I assured him after having him—getting aloose from his grasp, I wasn't going to touch the grill, I just wanted the food. And he again initiated physical contact on my persons. I nudged Mr. Williamson away from me, and he rushed back up on me. In the process, of that, the steak fell on the ground. And that's all it was. I thought the issue was dead. And they come up with this complaint.

Q.    At the time when you say Mr. Williamson grabbed you, did you feel threatened by that?

A.    Yes, sir.

Q.    Did you feel like—what did that make you feel in regard to your personal safety?

11

A. I felt like—I felt like I was in imminent harm or threat of imminent harm from the way Mr. Williamson and the way Mr. Riley had already treated me and the way he looked like stalking me, (R. 227).

Further, contrary to the portrayal of petitioner's demeanor, the record shows petitioner's demeanor was in fact, good, Mr. Sam Green testified:

"Petitioner's demeanor was good and "I just was sure he was going to stay until the courthouse opened." "Petitioner was in a good mood" (R.128-129).

Mr. Curtis Blair testified that petitioner was cordial, he testified: "Just cordial greetings" (R.194). When asked about the distance of the table the victim says he allegedly fell against, Mr. Blair testified: I'm saying probably 12 foot (R. 196), on re-direct, he testified; "I didn't see anybody fall or anything, No," (R. 197). Interestingly, the back of the victim's deposition; (state form C- 64(a), provides punishment(s) for giving untrue statements, in addition to the other punishments provided for by state law (see Ala. Codes §§13A-10-101, 102, and §13A-10-103, (CR. 8). See also 18 U.S.C.A. 241, §242.

Mrs. Linda Jeater, the party's sponsor, testified that there was other meat on the grill, (emphasis added). When asked the question,  "Was there any other meat on that grill, to your recollection? She testified, "Yes." "Because I had a steak on there" (R. 185), she further testified that, "It's the—now, my understanding it was the grill that we use." On re-cross by the prosecution, she inflexibly maintained, "I know my steak was still on the grill (R. 188). . . Oh, it was on the grill. I hadn't got my steak yet"(R. 189). Mrs. Jeater's testimony clearly contradicts the victim; he testified, "There was no meat left on this grill at all, (R. 81). Testimony shows other foods on the grill, the sponsor of the event, Ms. Linda Jeater testified that food was still on the grill and her testimony shows food remained on the grill even after Petitioner's battery and the victim's alleged

harassment. The sponsor testified the "grill was a grill we use" (R. 185). Additionally, the petitioner testified that other foods were on the gill, (R. 113-240). The evidence and testimony is clearly fabricated to negate the alleged victim's culpability. Not one single prosecution witness collaborates the alleged victim's deposition and testimony, which is the unlawful foundation on which the petitioner's prosecution rest. In fact, Mrs. Myra Ellis (pike county personal director) and Mr. Curtis Blair (Revenue Commissioner) were in the best position to see and hear the events leading up to the alleged harassment, she testified:

Q. Mrs. Ellis, what did you observe take place between Jeffery Baker (petitioner) and Bob Williamson (alleged victim)?

A.    As far as words, I did not hear them, but they were talking. And Mr. Baker walked up to Bob and body shoved him" (R. 113).

According to the alleged victim's deposition (CR. 7-8) and his testimony, (R. 84-102, 107-112) he had pushed petitioner not once by twice, nevertheless, Mrs. Ellis didn't see petitioner being pushed by the alleged victim, likewise, she didn't hear any loud demeanor of petitioner. Mr. Curtis Blair testified:

Q. "Now when you said they were kind of at—I believe you said at each other. Were they both pushing one another, to your knowledge? Is that what you saw?

A.    "Well, I just saw them butt up to one another."

Q.    Butt up. Like with their bodies?

A.    Yeah . . . (R. 195-96).

On cross-examination by the prosecution, Mr. Blair maintains, "They butted one another, I call it" (R. 199). Mr. Blair says he saw petitioner throwing the steak on the ground, nevertheless, he testified, he didn't see the police victim "stumble" against the table after he was alleged "pushed in the chest with both hands by petitioner" (R. 199). On redirect

Mr. Blair finally admits, "They were both talking to one another pretty well, yeah, (R. 201). The victim's deposition contradicts the testimony, furthermore, the victim's testimony contradicts his deposition, he testified petitioner "pushed him in the chest with both hands" and as a result he fell some 12 feet against a table, however, the witness in the best position to see and hear the event testified it was a "body butt" or "body shove" (CR. 8,) (R. 195-96, 113), and according to the victim testimony, if this court accepts that testimony as true, he initiated the harassment and/or pushing of what ever kind, not once but twice prior to petitioner's "body butt."

The verdict is contrary to law pursuant to and in accordance with Ala. Code § 13A-11-8 (a), because petitioner's intention was not to harass, alarm, or to annoy the alleged victim, in stead, the victim is criminally liable for any and all results after his initial unlawful physical contact with petitioner's person, Ala. Code §13A-2-5 provides:

> (a) "A person is criminally liable if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was sufficient to produce the result and the conduct of the actor clearly insufficient."
>
> **(b) "A person is nevertheless criminally liable for causing a result if the only difference between what actually occurred and what he intended, contemplated or risked is that:**
>
> **(1)    A different person or property was injured, harmed or affected; or**
>
> **(2)    A less serious or less extensive injury or harm occurred.**

Based solely on the law, Ala. Code §§13A-2-5, and 13A-11-8 (a) as written, the alleged victim is criminally liable because he caused the result. As applied, here, Ala. Code 13A-11-8 (a), the victim and his Captain, Dennis Riley, harassed, alarmed, and annoyed petitioner and their unlawful conduct/criminal liability is sanctioned by the same law, which makes petitioner's reaction unlawful. Based upon this unreasonable premise, Ala.

Code §13A-11-8(a) is rendered lawful with regards to the police victim, yet unlawful with regards to petitioner, Ala. Code §13A-11-8 (a) is lawful and unlawful under the same or similar facts. Nevertheless, the victim is criminally liable for causing the result if the only difference between what actually occurred and what he intended, contemplated or risked is that, a different person or property was injured, harmed or affected or a less serious or less extensive injury or harm occurred, Ala. Code §13A-2-5. More importantly, the court instructed the jury on to the law, §13A-3-26, as it relates to the defense of property other than premises and its inapplicability, he said (R. 294-295):

> "Now as I said, there are a couple of other statutes that come into play, and I want to touch on those briefly. Under 13A-3-26, the Alabama Code says this: A person is justified in using physical force, other than deadly physical force, upon another person when and to the extent that he reasonably believes it to be necessary to prevent or terminate the commission by the other person of theft or criminal mischief with respect to property, other than premises, *which is not applicable here,* (emphasis added) (R. 294-295).

The well-considered decisions to bring about the criminal charge against petitioner three days after petitioner sought criminal charges is based in fraud and conspiracy and the same is contrary to law to state and federal law, see 18 U.S.C.A. §241, and §242.

Additionally, the court instructed the jury as to a person acting intentionally, the court said (R. 294):

> "A person acts intentionally with respect to a result or the conduct when his purpose is to cause that result or to engage in that conduct" (R. 294).

The alleged victim has no lawful authority to prevent or to terminate petitioner's invitation or attempt(s) to retrieve food from the property of another, as it relates here, even if petitioner was stealing the property or destroying it, according to the court's instructions, and Ala. Code 13A-3-26. The question then, is, whether petitioner's

15

"reaction" to the unlawful contact of the victim is sufficient to produce the result and the unlawful battery to the persons of petitioner insufficient to cause the same result. It is illogical, absurd, and ridiculous to even suggest petitioner's attempted to participate, as an invitee was to intentionally cause the victim to committee a unlawful battery so that petitioner could harass, annoy, alarm the "police victim." Petitioner has an absolute right not to be menaced, harassed, and physically and verbally assaulted by law enforcement officers. There is absolutely no evidence that petitioner was other than peaceable until the alleged victim engaged in conduct that beached the peace. It is abundantly clear, there is no lawful basis by which the alleged victim may use force or commit a battery pursuant to the Court's instruction and Ala. Code 13A-3-26, and certainly no lawful authority to breach the peace and conspire, and fabricate evidence and testimony to abate criminal liability. The charge herein crafted by the law enforcement victim against the petitioner is for no lawful reason other than to abate criminal liability, Ala. Code §13A-11-8 (a), (b) and the same is contrary to state and federal law and is due to be remanded for dismissal on the merits, it is so prayed.

## GROUND FOUR

Petitioner's was denied his Sixth Amendment Rights to effective assistance of trial counsel as provided by the United States Constitution, Petitioner's constitutionally guaranteed right to the effective assistance of counsel was "clearly established" at the time his state-court conviction became final, in accordance with Strickland v. Washington, 466 U.S. 687, 80 L.Ed. 2d 674, 104 S. Ct. 2052 (1984). The issue is preserved in petitioner's motion for new, his list of issues and in his Petition to the Alabama Supreme Court. The issue was arguable on the merits in appellate counsel's

*Anders* brief, because the issue was raised within 30 days of sentencing in petitioner's sworn motion for new trial, Ex parte Ingram, 675 So. 2d 863 (Ala. 1996), Ala. Rule Crim. Proc. 32.2 (b). In order to meet the *Strickland,* two criteria must be satisfied to show the ineffective assistance of counsel claim, first petitioner must show counsel's performance was deficient and, two that the deficient performance actually prejudiced petitioner's defense. In order to prove prejudice, petitioner need only show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Petitioner requests the court take judicial notice, that the first Circuit Court trial ended with a deadlocked jury without petitioner testifying, as petitioner was forced to represent himself pro-se, (See USDCMDA 2:06-CV-61- ID). First, Counsel appeared for petitioner's trial in mental and physical duress due to a sudden illness (R. 72, 151,154-55). Counsel's sudden illness contributed to his deficient performance. Counsel's mental and physical impairments prejudiced the petitioner's defense by depriving counsel of such skill and knowledge as would render the trial a reliable adversarial testing process, and the same deprived petitioner of a Constitutional attorney required by the Sixth Amendment. Petitioner was deprived of a jury composed of fair cross section of the community (R. 55). Counsel's condition deprived petitioner of a jury composed of a fair cross section of petitioner's community. Counsel's deficient performance deprived petitioner of his Sixth Amendment right to favorable witnesses. Counsel's deficient performance and/or mental and physical impairments prejudiced the petitioner's trial, so that counsel was not functioning in his role to make the adversarial testing process work.

17

Trial counsel knew of eyewitnesses, other than county employees, that would have provided favorable testimony and contradict and impeach the testimony of the state's witnesses. Russell Thomas, for example, violated Ala. Code §13A-6-25 in an attempt to circumvent petitioner's complaint against the alleged victim. An audiotape of that occurrence was discoverable. Counsel had knowledge of the tape; nevertheless, he dismissed Russell Thomas and refused to call him as a defense witness. Incidentally, appellate counsel's Anders brief appendix of adverse rulings (Anders brief pg.17) fails to show these objections (R. 53) (see also Batson objection R. 55).    Trial counsel's performance was unreasonable, considering all of the attendant facts and circumstances made known to counsel by petitioner.  The court's first order of business was a hearing on the various motions to quash subpoenas (C. 08-10). Russell Thomas motion to quash subpoena does not appear among the motions.    Jake Wingard, Kathy Waters, jail trustee(s), and State Trooper(s), actually observed the incident and the petitioner's arrival. Two additional state troopers were actually on duty the day of the incident; they occupy an office in the Pike County Courthouse directly across from the party, petitioner observed these two troopers participating in the party. The would have contradicted Mrs. Carolyn Tyner and Mrs. Brockton's testimony that petitioner was banging on the rear door and cursing employee Brockton. There is no indication whatsoever that counsel even contacted these favorable defense witnesses, who would have established petitioner's good demeanor and the conversations that was allegedly discussed among county employees inside regarding the petitioner's outlandish behavior. These witnesses would have provided favorable and/or exculpatory testimony. Petitioner had to insist that counsel object (C. 53) when petitioner discovered counsel had stealthily released his best

defense witnesses, Russell Thomas, Jake Wingard, and Kathy Waters. Petitioner's Sixth Amendment right to have these favorable defense witnesses was circumvented by counsel's objectively unreasonable decisions. These witnesses would have provided trustworthy testimony; in fact, Russell Thomas is responsible for the enforcement of Alabama laws in Pike County. The alleged victim testified: (. . .) My boss, Russell Thomas, instructed him regarding the complaint (R.95). Russell Thomas informed petitioner, "If petitioner pursued the incident, his department would pursue the incident." Indeed, petitioner's decision to institute complaint is the basis for the charge; counsel had a constitutional and professional duty to present this witness to petitioner's jury. Counsel failed to investigate or to discover the names of the jail trustees who was observed by petitioner and witnessed the event. They were responsible for setting up the grills and removed and/or disposed of the purported damaged steak. They would have testified as to food remaining on the grill after the incident and what they observed and heard. Counsel failed to talk to or take these witnesses statements. Counsel's failure to present the eyewitnesses and other witnesses to the occurrence(s) constitutes errors in professional judgment that undermined petitioner's trial and thereby prejudiced the outcome of the trial so as to render such trial unreliable as producing the just result.

In another instance, the record shows trial counsel excluded testimony with regards to District Attorney, Gary McAliley, who testified in the previous trial about specific occurrences with respect to his office and state witnesses. The prosecution's objection (R. 210) shows the District Attorney previous testimony was favorable, but as the prosecutor rightly says that previous testimony:

"Went into specifics about, you know, Mr. Baker's relationship with him and that kind of thing, **rather than just saying that, you know**, his general reputation in the community, (R. 210).

THE COURT: Yeah. It was a little broader than that, but, you know, It's either that ---It's either that transcript or me having to force Mr. McAliley here, Which, I mean, I'm not keen on doing, but, you know, (R. 210).

Later in the trial, petitioner was ordered to "return to the defense table" (R. 261) and while out of the hearing and presence of the petitioner, counsel entered the petitioner into a stipulation agreement (R. 261-65), petitioner insisted on the previous transcript be read into the record or that his Sixth Amendment Right to have favorable witness be complied with. The agreement was used to exclude this favorable testimony. Counsel first characterized the testimony of Judge McAliley as "A very good character witness" (R. 08). Trial Counsel subpoenaed Judge McAliley and he also subpoenaed the transcript of witness McAliley previous testimony (CR. 481-83) nevertheless, rather that read the that favorable testimony into the record, counsel stipulated petitioner's reputation for truth and veracity in the community was good only up to September 6, 2002, the date of the event. However, petitioner's personal relation with this witness was not established until well after September 6, 2002. Petitioner's jury was instructed to consider the stipulation along with all other evidence in the case to arrive at the verdict, (R. 264). This witness previous testimony also provided very good rebuttal testimony. Nevertheless, the prosecution inserted the following language without counsel's objection:

**The Court**:   And, Mr. Whigham, is that so stipulated?

**Mr. Whigham**: Yes, Sir. The only thing that the state would ask is this would be prior to September 6, 2002.

**Mr. Taylor**: We would agree with that statement.

**The Court**: And you understand then the addition to that stipulation that that reputation regarding general reputation and truth and veracity was prior to September 6, 2002?

**Mr. Taylor**: yes, Your Honor. (R. 265)

Petitioner's credibility was ruptured in the eyes of the jury by the stipulation agreement. Counsel was provided the nexus and the dates of petitioner's relationship with this witness, he also has knowledge of the facts as testified to previously because he had the transcript, which shows officials responsible for the prosecution of the case inappropriately approaching this witness. Counsel had knowledge of rebuttal testimony. Counsel had knowledge that court officials approached Witness McAliley in an attempt to harm the relationship between petitioner and defense witness McAliley. His decision was objectively unreasonable and undermined petitioner's established credibility and best defense thereby deprived petitioner of rebuttal testimony by the "very good witness" and the petitioner's asserted defense plan. The stipulation agreement was not a strategic decision nor was it objectively reasonable, but was highly prejudicial and prevented the "very good character witness" testimony and which would have further established petitioner's asserted defense. Counsel's deficient performances in this regard produced sufficient prejudice to undermine the outcome of the trial. Petitioner was severely prejudiced by counsel's deficient performance and the resulting verdict cannot be relied on as having produced the just result.

Next, trial Counsel failed to admit State's exhibits three and four into the evidence for the jury deliberations. The state's exhibits three and four was marked for identification and used to impeach the petitioner's testimony. Counsel failed to use the documentation to rehabilitate, or, at the very least, have them admitted into evidence for

the jury's deliberations. State exhibits three and four are affidavits of the petitioner, they show all the actions of the party participants on September 6, 2002. Counsel's decision not to admit the evidence (affidavits) deprived the jury of significant evidence for their deliberations. The state appellate Courts contend they have not found any error that requires reversal; nevertheless, an attorney's knowing decision to dismiss key witnesses with significant personal knowledge of fact that contradicts the state's case in chief, establishes a model ineffective assistance of counsel claim. Likewise, an attorney who stealthy enters into an idiotic stipulation agreement and fails to admit affidavits into the evidence that meticulously document the facts sought to be proven is sufficient to undermine the proper functioning of adversarial process so that the trial cannot be relied on as having produced a just result. Certainly, counsel who allows defendant's reputation for truth and veracity to be dammed and posses' knowledge and evidence that clearly indicates otherwise must fail <u>Strickland</u>.

Under *Strickland*, petitioner shows (1) Counsel's performance was deficient, by his unprofessional decisions to dismiss key professional witnesses. By failing to call other eyewitnesses who were on the scene and would have provide exculpatory and contradictory testimony. Failing to have admitted into evidence State's exhibits three and four attesting to the conduct of the alleged victim and others similarly situated September 6, 2002, for jury deliberations, and by entering petitioner into the stipulation agreement that dammed petitioner's defense and his reputation for truth and veracity. Counsel's deficient performance prejudiced petitioner's defense by depriving petitioner of his Sixth Amendment right to have favorable witnesses on his behalf; by failing to introduce and to have admitted exculpatory evidence for jury the deliberations. Counsel's deficient

performance prejudiced petitioner's defense and deprived the petitioner of a fundamentally fair trial, a trial whose result is reliable.

Further, petitioner insisted on vindictive/selective and/or discriminatory prosecution and made known the numerous evidences that support the contentions. According to the Alabama Rules of Professional Conduct for lawyers, Rule 1.2:

> (a) "A lawyer shall abide by a client's decisions concerning the objectives of representation, subject to paragraphs (c), (d) and (e), and shall consult with the client as to the means by which they are to be pursued. "
>
> (b)  A lawyer's representation of a client, including representation by appointment, does not constitute and endorsement of the client's political, economic, social or moral views or activities.
>
> (c)  A lawyer's may limit the objectives of the representation if the client consents after consultation (emphasis added).
>
> (d)  A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

Petitioner's defense strategy is clearly set forth by petitioner's letter contained in the record for review, because counsel failed to meet with or advance any defense strategy (CR. 487-489). The letter contains information and/or the place where relevant documentation(s) could have been located supporting petitioner's asserted defense strategy. Counsel's discovery failure denied petitioner the opportunity to present a full and complete defense, had counsel subpoenaed the production previously granted, petitioner's acquittal is likely, given the first trial ended in a hung jury (emphasis added). Based upon petitioner's clearly outlined defense plan (CR. 487-489) and given that the first trial ended in a hung jury, petitioner's trial was a fraud and a role-play. Petitioner's defense was prejudiced by counsel's decision to abate petitioner's objectives and defense

strategy. Petitioner's trial was prejudiced by the objectively unreasonable errors of his appointed counsel; he is therefore entitled to a New Trial.

## **GROUND FIVE**

Petitioner is denied Due Process and Equal Protection and/or subjected Vindictive and/or Selective Prosecution. According to the Fourteenth Amendment, "No State shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws." Likewise, the Fourth Amendment (. . . ) requirement that "No warrants shall issue, but upon probable cause, supported by oath or affirmation describing the place and persons to be seized" applies to search as well as arrest warrants, Whiteley v warden Wyoming State Penitentiary, 401 U.S. 500, 91 S.Ct.1081, 28 L.Ed. 2d 306 (1971).

To prevail on the Fourteenth Amendment equal protection claim contenting vindictive enforcement, petitioner must show, (1) exercise of protected right; (2) enforcer's stake in exercise of the right; (3) unreasonableness of enforcer's conduct; and (4) that enforcement was initiated with intent to punish for the exercise of protected right U.S.C.A. Const. Amend. 14.

First, as all participants to the commencement of the prosecution were well aware, the charge against petitioner is the by-product of criminal charges sought against the officers, agents, and employees of the state of Alabama and Pike County for unlawful conduct and improper closing of state and federal offices in the Pike Courthouse on September 6, 2002. The vindictive enforcement of Ala. Code § 13A-11-8 against the petitioner is enforced with both an unequal hand and an evil eye. Petitioner's decisions to exercise his statutory and constitutional rights to peaceably appear at the Pike County

Courthouse, to question its closure on September 6, 2002, and be assaulted and subjected to other verbal and physical harassment(s) for questioning the lawfulness of the enforcers actions and conduct, should adequately satisfy the first prong.

The second prong speaks for itself, the Pike County Sheriff Department is responsible enforcing the laws violations at the Pike County Courthouse. The pike county sheriff department, its officers, agents, and employees prevented petitioner from exercising of his constitutional and statutory rights to appear at the seat of power and to question the State and federal officers therein housed. To enforce the laws violation complained of by the petitioner would necessarily require the Pike County Sheriff Department to enforce the laws violations against its self. More specifically, Pike County Deputy Captains, Doug Wheeler, and Dennis Riley, witnessed the harassment and other violations of subordinate sheriff department personal however, instead of enforcing the laws, encouraged the violations. Doug Wheeler, sought to intimidate the petitioner by brandishing his service weapon, stating, petitioner "need a couple of these 44's." Captain Dennis Riley slammed the entrance doors to the courthouse and said, "you're not taking your dammed ass in this building." Pike County Sheriff, Russell Thomas, stated, "if petitioner pursued criminal charges, he would pursue charges against petitioner. Bob Williamson committed a physical battery to petitioner's persons. Deputy Frank Wheeler stated he was going to "Fuck petitioner up," that petitioner's ass belonged to him, "that he was going to kick petitioner's ass. In an attempt to prevent petitioner from commencing a complaint for the actions above cites (CR. 229-235), the pike county sheriff department chief officers violated the laws they swore to uphold to create fear and apprehension in the heart and mind of petitioner to prevent criminal sanctions provided

by state and federal law 18 U.S.C 241 and 18 U.S.C §242, Ala. Code §§13A-4-3, §13A-11-8 (a) and (b), 13A-6-23, and Ala. Code §13A-6-25.

Third, the unreasonableness of the pike county sheriff department's conduct in crafting evidence without probable cause to maintain a chargeable offense against Petitioner is unreasonable. Further, Pike County Sheriff, Russell Thomas threatened petitioner, that "If the petitioner pursed the incident the sheriff department would pursue the incident without a bases in fact or in the law and in violation Ala. Code §13A-6-25. Furthermore, sheriff department Investigator Frank Wheeler, threatened that he was going to "fuck petitioner up, that he was going kick petitioner's ass, that petitioner's ass belonged to him." Such conduct is a violation of Ala. Code. §13A-11-8 (b) (2). Captain Doug Wheeler brandished his weapon and declared, that his dog choking device was too good for petitioner, "That petitioner needed "a couple of these 44's" while patting his service weapon. Even after the "alleged harassment" the pike county sheriff department continued the illegal action above cited causing great mental distress to petitioner's persons and rights. Pike County sheriff department officer and agents continued to violate the petitioner in a feeble attempt to create a cause for petitioner's arrest.

Fourth, the enforcement was initiated with intent to punish petitioner for his exercising of his protected rights to defend his federal and state law rights. Petitioner is denied his rights while the alleged victim is sustained by Pike county officials charged with the laws lawful administration without regard. The issuing magistrate, Brenda M. Peacock, refused petitioner his statutory right to commence complaint in accordance with established statutory law, Ala. Const. Article I §§ 5 and 6, Ala. Code §§ 15-7-2, and §15-7-3. Petitioner appeared before the said Brenda M. Peacock for the purpose of instituting

complaint for the violations pursuant to state law and on the day of the violations. Alabama law dictates how a complaint is to be commenced. Petitioner provided the issuing official with the factual details and cited the violations, nevertheless, three days later; the alleged victim appeared before the same said Brenda M. Peacock alleging the same or similar facts and under the same code section and was sustained in his unlawful action. According to established law, only a neutral and detached judge or magistrate may issue warrants. Despite, Pike County District Judge William Hightower disqualified himself pursuant to Cannon 3 (C) (1) on September 12, 2002, (CR. 17); in addition, two Coffee County district judges assigned the case recused. Petitioner has lodged at least three complaints, supported by affidavit, against the issuing magistrate above and her staff. Petitioner has complained to the Administrative Director of Courts and the Alabama attorney General regarding the issuing magistrate. Petitioner prevailed in a suite at law against the magistrate's business, Pike County Case No. CV-92M-307. Certainly, if three district judges whom the petitioner has never met was required to disqualify in the case, the issuing Magistrate, under the totality-of-the circumstances, is certainly required to do so. Furthermore, the magistrate testified in the trial that: "He (petitioner) has caused us concern in our office by his actions" (R. 251). Had petitioner been afforded his statutory and constitutional safe guards, as the alleged victim, the outcome would have been different.

This issue is well preserved in petitioner's motion for new trial and was presented in the list of issues to the appellate Courts of Alabama. The Appellate counsel contends there are no arguable issue preserved, however, such contention is an absurdity. At the onset, petitioner sought complaint with visible injuries sustained as a result of an assault

and battery against his person by the alleged victim. Under statutory provisioning, 13A-11-8, 13A-6-23, and 13A-6-25, probable cause existed for issuance of warrant of arrest. The code sections above cited are intended to cover any un-consented to physical touching, abusive or obscene language, placing a person in fear of imminent serious physical injury, or without legal authority, threats to a person against his will to engage in an unlawful act or refrain from doing a lawful act, without regard. According to the issuing Magistrate, and the Judge McAliley, petitioner is known for his reputation for truth and veracity (R. 251, 265), there is no lawful reason why petitioner is subjected to the denial of statutory rights § 15-7-2 and §15-7-, but for the above due process and equal protection violations. The complaint against the petitioner is instituted for no other reason than to abate recourse. Despite, appellate counsel *Anders* contentions, the actions of law enforcement and court officials validate the invidious vindictive enforcement of the law(s) in Pike County, Alabama previously complained of by the Petitioner. For the above-cited reasons, this Honorable Court is required, pursuant to the due process and equal protection clause of he Fourteenth Amendment, step forth, and protect the legal rights of the petitioner and other all citizens of Alabama without regard. It is so prayed and respectfully requested.

## GROUND SIX

Petitioner is subjected to Batson Violations; the holding in *Batson* provides that "the State's privilege to strike individual jurors through peremptory challenges is subject to the commands of the Equal Protection Clause. U.SC.A. Const. Amend. 14. The Equal Protection Clause forbids the prosecutor to challenge a potential juror solely on account of race or on the assumption that a black juror will be unable impartially to consider the

State's case against petitioner. Trial Counsel objected and requested the court to "note our objection for the record (R. 55). The issue is preserved and arguable. Clearly, the prosecutor exercised peremptory challenges to remove from the venire members of the petitioner's race; specifically, 10 of the 18 strikes were based on race. The prosecutor failed to elicit from the venire during voir dire any race-neutral reasons for striking the black veniremen, which raise the inference that the prosecutor used his peremptory challenges to exclude or strike black veniremen from the petite jury on account of their race. More specifically, veniremen born before 1977 were excluded or struck by the prosecutor and the only black veniremen chosen were government's employees and/or their spouses. Petitioner's jury was not representative of a fair cross section of Pike County. Petitioner submits the issue is arguable and preserved in the record for Habeas Corpus review by this Honorable Court.

## GROUND SEVEN

The Circuit Court Abused His Discretion and the issue was preserved for review on appeal. Despite appellate counsel's Anders brief and the Court assertions that they have not found any arguable issues that had been preserved for review, misapprehended Ex parte Monsanto Co. (Ala. 2003), and the Alabama Cannons of Judicial Ethics, Cannon(s) 2 (A), (B), Canon 3 (C) (1) and 3 (C) (1) (a), in Ex Parte Cotton, 638 So. 2d 870 (Ala. 1994). The Alabama Supreme Court held: "When disqualification of trial judge is required, duty is squarely placed upon judge to disqualify himself. Nevertheless, the trial judge abused his discretion by not disqualifying from the case upon proper request of petitioner (CR. 212-16). Houston County Case CC-97-509-A arose in the Pike County

District Court as DC- 97-43, wherein the alleged victim provided the basis for contentions of fraud, and the factual basis for other contentions of law enforcement; prosecutorial and judicial misconduct requiring all judges of the 12th and 20th judicial circuits of Alabama to previously recuse. Remarkably, no action is taken in the cases, two cases in particular, Pike County Cases CV-95-121, CV-95-128 remain pending on the Pike County dockets and provides a close nexus to the Houston County and the alleged victim. It is noted that bias or prejudice of a judge, in the disqualifying sense, must stem from an extrajudicial source and not from what the judge hears or sees during the trial. To be a disqualifying factor, the bias or prejudice demonstrated by trial judge must be personal and be of deep rooted animus that a fair minded person could not be expected to set it aside in judging certain person or cause before the court, and with some exceptions it must come from an extrajudicial source. It is the contention of petitioner that the animus stems from petitioner's challenge(s) to the bench and bars of Pike and Houston Counties, resulting in the recusal of all circuit and district judges in each said counties.

## **GROUND EIGHT**

Petitioner is subjected to Excessive Sentence in violation of the Eight Amendment to the United States Constitution. Cleary, the sentence is meted out for the sole purpose of humiliating petitioner rather than proper administration of justice for an alleged nudge or body push during an altercation initiated by the victim. The Trial court abused his discretion in a clear attempt not to punish petitioner for the gravity of the offense but rather for matters outside the alleged violation. The Alabama Rules of Criminal Procedure, Rule 26.8 set forth sentencing principles which calls for the least restrictive sanction that is consistent with the protection of the public and the gravity of the crime.

The petitioner is a 47-year-old back man with no history of violence and full-time student. Additionally, petitioner was previously sentenced to 180 days suspended for 30 days in the County jail, all-total, exceeds $2,700.00, and 60 days in county jail for a body nudge and the purported damage to a steak at a county party. Clearly, the sentence is disproportional to the gravity of the crime. Petitioner is unable to find a single case, under the circumstances, where a body nudged to an initial aggressor after a battery to his persons merits 30 days hard labor in county jail. According to the Eighth Amendment, the fines and the punishment is excessive and is cruel and unusual for a crime of this gravity, especially considering all the attendant circumstances and the parties involved. The trial court clearly abused his authority because there is no rational basis for the fines and punishment imposed under the circumstances and the gravity of the crime and risk the petitioner posed to the public at large.

## CONCLUSION

Based on the forgoing grounds, petitioner's memorandum of law in support, and the record in case the petitioner Respectfully urges this Honorable Court to proceed under its Habeas Corpus Rules and grant Federal review.  It is so prayed and respectfully submitted in good faith.

## VERIFICATION

Before me, the undersigned NOTARY personally appeared Jeffery Baker Jr, who after being duly sworn, states the following:

My name is Jeffery Baker Jr, I am over 21 years of age and I have personal knowledge of the information contained in petitioner's grounds and in Petitioner's memorandum of law in support thereof. I hereby verify under penalty of perjury that the forgoing in true and correct and that the petitioner's petition for Writ of Habeas Corpus; attached grounds, and memorandum of law in support was properly mailed to the Clerk,

United States District Court for the Middle District of Alabama, at P.O. Box 711 Montgomery, Alabama, 36101 by United States mail with the proper postage affixed thereto.

I further swear under penalty of perjury I did not intentionally harass, annoy, or alarm the victim or subjected him to physical touching with the requisite intent to harass, annoy, or alarm him.

Done this the ___1st___ day of March 2006.

Jeffery Baker Jr,
Crenshaw County Jail
186 Justice Avenue
Lueverne, Alabama 36049
C/O Pike County Jail
120 West Church Street
Troy, Alabama 36081


BEFORE ME, the undersigned NOTARY PUBLIC did personally appear Jeffery Baker Jr, who states to me he is aware of the contents of the foregoing petitioner's grounds and memorandum of law in support of petition for writ of habeas corpus and that he did execute the same voluntarily.

Sworn to and subscribed before me this ___1st___ day of March 2006.

_____
NOTARY PUBLIC

Nichelle W. Simmons, Notary Public
Pike County, State of Alabama
My Commission expires on 3-25-06

My Commission Expires: _____

## CERTIFICATE OF SERVICE

I hereby certify that I have this the day ___/5ᵗ___ March, 2006, served the forgoing Petition for Writ of Habeas Corpus with attached grounds and memorandum of law in support, and with supporting exhibits and/or attachments herein below stated, on the Clerk of the United States District Court by United States mail, with the postage pre-paid and affixed thereto and properly addressed as follows:

Clerk, United States District Court
For the Middle District of Alabama
P. O. Box 711
Montgomery, Alabama 36101

Enclosures:
Money order # 08002-09045300418
Transcript of proceedings
Certificate of judgment
Rehearing denial
Certiorari Denial

JEFFERY BAKER JR

# THE STATE OF ALABAMA - - JUDICIAL DEPARTMENT
# THE ALABAMA COURT OF CRIMINAL APPEALS

**CR-04-1080**

Jeffery Baker v. State of Alabama  (Appeal from Pike  Circuit Court: CC03-248)

## CERTIFICATE OF JUDGMENT

WHEREAS, the appeal in the above referenced cause has been duly submitted and considered by the Court of Criminal Appeals; and

WHEREAS, the judgment indicated below was entered in this cause on August 19th 2005:

### Affirmed by Memorandum.

NOW, THEREFORE, pursuant to Rule 41 of the Alabama Rules of Appellate Procedure, it is hereby certified that the aforesaid judgment is final.

**Witness. Lane W. Mann, Clerk**
**Court of Criminal Appeals, on this**
**the 10th day of February, 2006.**

**Clerk**
**Court of Criminal Appeals**
**State of Alabama**

cc: Hon. Larry K. Anderson, Circuit Judge
    Hon. Brenda M. Peacock, Circuit Clerk
    Douglas C. Freeman, Attorney
    Jeffery Baker, Pro Se
    Office of Attorney General

# IN THE SUPREME COURT OF ALABAMA



February 10, 2006

**1050121**

Ex parte Jeffery Baker.  PETITION FOR WRIT OF CERTIORARI TO THE COURT OF CRIMINAL APPEALS  (In re: Jeffery Baker v. State of Alabama)   (Pike Circuit Court: CC03-248; Criminal Appeals : CR-04-1080).

## CERTIFICATE OF JUDGMENT

### Writ Denied

The above cause having been duly submitted, IT IS CONSIDERED AND ORDERED that the petition for writ of certiorari is denied.

SMITH, J. -  Nabers, C.J., and Lyons, Woodall, and Parker, JJ., concur.

I Robert G. Esdale, Sr., as Clerk of the Supreme Court of Alabama, do hereby certify that the foregoing is a full, true and correct copy of the instrument(s) herewith set out as same appear(s) of record in said Court.

Witness my hand this _10th_ day of _February,_   _2006_

_Robert D Esdale Sr_

Clerk, Supreme Court of Alabama

/bb

# COURT OF CRIMINAL APPEALS
## STATE OF ALABAMA

**Lane W. Mann**
 Clerk
**Sonja McKnight**
 Assistant Clerk



P. O. Box 301555
Montgomery, AL 36130-1555
(334) 242-4590
Fax (334) 242-4689

October 7, 2005

**CR-04-1080**

Jeffery Baker v. State of Alabama  (Appeal from Pike  Circuit Court: CC03-248)

## <u>NOTICE</u>

You are hereby notified that on October 7, 2005 the following action was taken in the above referenced cause by the Court of Criminal Appeals:

Application for Rehearing Overruled.

**Lane W. Mann, Clerk
Court of Criminal Appeals**

cc: Hon. Brenda M. Peacock, Circuit Clerk
   Douglas C. Freeman, Attorney
   Jeffery Baker, Pro Se
   Office of Attorney General

Notice: This unpublished memorandum should not be cited as precedent. See Rule 54, Ala.R.App.P. Rule 54(d), states, in part, that this memorandum "shall have no precedential value and shall not be cited in arguments or briefs and shall not be used by any court within this state, except for the purpose of establishing the application of the doctrine of law of the case, res judicata, collateral estoppel, double jeopardy, or procedural bar."

# Court of Criminal Appeals

State of Alabama

Judicial Building, 300 Dexter Avenue

**P. O. Box 301555**

**Montgomery, AL 36130-1555**

RELEA...

AUG 1 9 2005

CLERK
ALA COURT CRIMINAL APPEALS

H.W."BUCKY" McMILLAN
Presiding Judge
SUE BELL COBB
PAMELA W. BASCHAB
GREG SHAW
A. KELLI WISE
Judges

Lane W. Mann
Clerk
Sonja McKnight
Assistant Clerk
(334) 242-4590
Fax (334) 242-4689

## MEMORANDUM

CR-04-1080                    Pike Circuit Court CC-03-248

Jeffery Baker v. State of Alabama

Baschab, Judge.

The appellant was convicted in the Pike District Court of harassment, a violation of §13A-11-8(a)(1)a., Ala. Code 1975, and the district court fined him $100. He appealed his conviction to the Pike Circuit Court for a trial de novo, and he was again convicted of harassment. The circuit court sentenced him to serve a term of ninety days, but suspended the sentence and ordered him to serve thirty days followed by two years on probation. The appellant filed a motion for a new trial, which the circuit court summarily denied. This appeal followed.

Appellate counsel filed a brief and a motion to withdraw in substantial compliance with Anders v. California, 386 U.S.

738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967). In his brief, counsel asserted that he had not found any arguable issues that had been preserved for our review. The appellant filed a list of pro se issues for our consideration. After thoroughly reviewing the record and the appellant's pro se issues, we have not found any error that requires reversal. Accordingly, we affirm the circuit court's judgment.

**AFFIRMED.**

McMillan, P.J., and Cobb, Shaw, and Wise, JJ., concur.