**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| JEFFERY BAKER JR, | * * * | |
| Petitioner, | * * | |
| vs. | * * | 2:06-CV-201-MHT |
| RUSSELL THOMAS, *et. al.,* | * * | |
| Respondents., | * * | |

## PETITIONER'S OBJECTION TO THE
## MAGISTRATE JUDGE RECOMMENDATION

Comes now the Petitioner, pro-se, unlearned in law, respectfully, and in good

faith, to object to the Recommendation of the Magistrate Judge issued May 5, 2008. As

grounds, petitioner submit the following:

In order for the petitioner to prevail on his claims adjudicated on the merits by the

state courts, petitioner must show that the decision by the state court's was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined

by the Supreme Court of the United States, or was based on an unreasonable

determination of the facts, in light of the evidence presented in the state court

proceedings.

### *Ineffective Assistance of Appellate Counsel*

The Magistrate's Recommendation stresses, petitioner failed to set forth any non-

frivolous argument that appellate counsel should have filed on appeal that thereby made

the filing of an Anders brief ineffective. He reasoned, because petitioner submitted numerous *pro se* issues that were rejected by the appellate court, petitioner's argument was therefore frivolous (Mag. Recom. Pg. 7). As he says, petitioner made no showing of either deficient performance or prejudice regarding the appellate counsel.

Despite the Magistrate's assertions, petitioner's claim that the verdict is contrary to law, the ineffective assistance of trial counsel and, the Batson claim readily contradicts the Magistrate's findings. Even a perfunctory review of these issues shows sufficient merit-"actual or arguable." Clearly, petitioner was denied a substantial appeal by appellate counsel's *Anders* brief. "Defendant has right to effective assistance of counsel on direct appeal of a state court conviction" *Johnson v. Dugger,* 911 F.2d 440 (11th Cir. 1990).

First, the verdict is contrary to law, which will be discussed in more detail later on, shows that there was no evidence adduced at the trial that the petitioner's specific intent was to harass, annoy, or alarm the alleged victim. The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction except upon proof beyond a reasonable doubt of "every fact" necessary to constitute the crime. Notably, petitioner's first jury failed to reach a verdict in the harassment charge. More importantly, petitioner was not represented by counsel in the first jury trial and petitioner did not testify at that jury trial. No reasonable jury could have found petitioner guilty beyond reasonable doubt based on the record evidence here presented. The verdict is simply contrary to state law.

Secondly, the Recommendation stress,

> "Petitioner has the burden of providing specific information as to the evidence which could have been obtained had counsel called the witnesses in question and of demonstrating whether such testimony would have produced a different result. He failed to make the necessary factual

2

showing, however, and thus, his mere conclusory allegations are insufficient to compel a finding that trial counsel was ineffective for failing to call the alleged witnesses to testify" ( Mag Recomm. Pg. 13).

Appellate counsel, according to his *Anders* obligation(s), is required to argue any non-frivolous claim. The Recommendation says, "Petitioner has not provided affidavits from any of the proposed witnesses which he complains were not called, and failed to specifically identify some of his purported witness." According to the Sixth Amendment and *Anders*, appellate counsel is required to at least discover the information. The Recommendation suggests, had petitioner provided specific information as to the evidence that could have been obtained had counsel called certain witnesses and demonstrated whether such testimony would have produced a different result, then Federal habeas relief maybe available. Petitioner's appellate counsel had the duty to raise the ineffective trial counsel claim. Here, the recommendation shifts the burden to the petitioner to do what the appellate counsel is required to do in *Anders v. California*, 386 U.S.738, S.Ct. 1396, 18 L. Ed. 2d 493 (1967). In order to satisfy the deficient representation prong, the petitioner need only show that counsel failed to discover non-frivolous issues and to file a merit brief raising them. When reviewing the reasonableness of appellate counsel's decision not to raise the petitioner's claim this Honorable Court must consider all the circumstances. To determine whether petitioner was prejudiced by appellate counsel's failure to raise petitioner's issue(s), a determination must be made as to whether the issues petitioner maintains his counsel should have raised contained sufficient merit-"actual or arguable." Appellate counsel can be faulted for not having raised the issues here presented. *Miller v. Dugger, 858 F. 2d 1536, 1538 (11th Cir. 1988).* As the Recommendation suggests, if petitioner would have attached affidavits, provided

3

specific detail, and/or provided specific information the ineffective trial counsel claim would have had merit-actual or arguable. Like wise, the recommendation's Batson argument stresses:

> The court cannot discern from the record how many blacks made up the pool of potential jurors or even whether defense counsel struck any black persons. The record reflects that there was a total of 54 persons on the jury panel of which six were challenged for cause leaving a remaining pool of 48 jurors. (*Doc. No. 8, exh, A at 505.*) Notwithstanding the presence of black jurors on Petitioner's jury panel, the court is cognizant that such presence, while significant, does not necessarily preclude a finding of racial discrimination. *United States v Allison, 908 F. 2d 1531, 1537 ( 11th Cir. 1990).* Recom. pg. 20

As the Magistrate points out: " Petitioner must do more than simply point out " the bare fact of the removal of certain venirepersons and the absence of an obvious valid reason for the removal. "*United States v Allison, 908 F. 2d 1531, 1537 ( 11th Cir. 1990).* Petitioner maintains the issue contained sufficient merit-actual or arguable and the appellate counsel can be faulted for not having raised it. *Miller v. Dugger, 858 F. 2d 1536, 1538 (11th Cir. 1988).*

More significantly, petitioner filed his Reporters Transcript Order form (ARAP 1C) that requested the "argument of counsel(s)", (CR. 559-560). The prosecution made forbidden prejudicial statements during his closing arguments. Petitioner's conviction is based on is forbidden statements of the prosecutor during his closing arguments. The magistrate says: "Petitioner has not shown, as required by 2254 (d), that the appellate court's decision on this claim was contrary to federal law or an unreasonable determination of the facts in light of the record evidence. However, appellate counsel's *Anders* brief lacks a conscientious examination of the entire record below as required by clearly established federal law, *Anders v. California.* The first requirement of an appointed counsel is a "conscientious examination of the entire record below" *Anders*.

4

The State courts decision to uphold appointed counsel's *Anders* brief without first requiring the entire record below is contrary to clearly established Federal law, as determined by the Supreme Court of the united States or involved an unreasonable determination of the facts in light of the record evidence. In <u>U.S. v. Osorio-Cadavid</u>, 955 F. 2d 686 (11th Cir. 1992) the court held: "Appellate counsel did not fulfill obligation to review entire transcript for plain error prior to filling *Anders* brief." In <u>Hardy v. United States</u>, 375 U.S. 277 84 S.Ct. 424, 11 L. Ed. 2nd 331 (1964), the Court reasoned that new counsel could not faithfully discharge the obligations that the court had placed on him or her unless he or she could read the entire transcript. See Also <u>United States v. Gregory</u>, 472 F. 2d 484, 486 (Fifth Cir. 1973), "The [Supreme] Court stressed that the duty of representation of an appellate lawyer included the duty to search out plain error, and that nothing less than a complete transcript would suffice to accomplish this." <u>In U.S. v. Clark</u>, 944 F. 2d 803 (11 Cir. 1991), the Court held, "without complete record court of appeals could not make critical determination whether appeal was sufficiently frivolous." Furthermore, Petitioner sought supplementation and/or amendments to the record and filed an objection to the Court's denial. Clearly, argument of counsel were ordered by petitioner in time to secure inclusion, and appellate counsel was at least obligated, pursuant to clearly established Federal law; to have the record supplemented and/or corrected prior to his *Anders* brief. It is clear, according to §2254 (d), *Johnson v. Dugger, 911 F.2d 440 (11th Cir. 1990), Miller v. Dugger, 858 F. 2d 1536, 1538 (11th Cir. 1988); Anders v. California*, 386 U.S.738, S.Ct. 1396, 18 L. Ed. 2d 493 (1967); *Hardy v. United States*, 375 U.S. 277 84 S.Ct. 424, 11 L. Ed. 2[nd] 331 (1964); that the appellate court's decision on this claim was contrary to federal law or an unreasonable determination of

5

the facts in light of the record evidence. Appellate Counsel was not the zealous advocate contemplated by the Sixth Amendment.

### Sufficiency of the Evidence

Here, the Magistrate's rational is premised on *United States v. Harrell, 737 F. 2d 971, 979 (11th Cir. 1984)*, which held: "the evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, and *Jackson v. Virginia,* 433U.S. 307, 324 (1979) which held, "Sufficiency claims are judged by the elements defined by state law. The Magistrate reasoned, because the state court rejected the sufficiency of the evidence claim, Federal habeas relief must be denied. He also says he independently reviewed the record, the arguments presented by the parties, applicable statutes, and controlling case law.

First, Petitioner strongly objects to the magistrate's failure to address Petitioner's separate ground; that the verdict is contrary to law. The recommendation essentially dismisses this ground, because, as the Magistrate says; the "claim re-states the sufficiency of the evidence claim." However, the Federal Rules of Civil Procedure, Rule 8 (a) provides for relief in the alternative or of several different types. Here, unlike the the *Jackson* Court, which was of the view that some evidence that the petitioner had intended to kill the victim could be found in the facts that the petitioner had reloaded his gun after firing warning shots, that he had time to do so, and that the victim was then shot not once but twice. There is no evidence petitioner had the requisite culpable mental state to committee the crime of harassment under the circumstances here presented. The Magistrate fails to state what evidence of record supports the Magistrate's findings. Additionally, according to  §2254 (e) 2 (f), there is absolutely no evidence before this

6

Honorable Court that the petitioner's specific intent was to harass, annoy, or alarm the alleged victim. Furthermore, the claim that the verdict is contrary to law contains the record excerpt adduced at trial. Based on such evidence, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. The indispensable specific intent, to harass, annoy, or alarm the alleged victim is not in attendance, Ala. Code 1975 §13A-8-11(a)(1)(a). The United District Court in *Wilcox v. Ford*, 813 F. 2d 1140 (11th Cir. 1987), concluded: the evidence was insufficient for two reasons: (1) the evidence at trial presented an alternative hypothesis to explain. . . and that hypothesis raised a reasonable doubt as to Wilcox's guilt; and 2) the only testimony linking Wilcox with the death . . . could not be accepted as true by a rational trier of fact. That court went on to say: Police misconduct . . . "shocked the conscience" thereby violating due process. As a result, the court held, *Wilcox* would be entitled a new trial even if there had been sufficient evidence to convict under *Jackson v. Virginia*. Here, the record evidence presented in the state courts shows, the victim initiated physical contact with petitioner not once but twice resulting in injuries to petitioner's persons. The record evidence adduced at trial shows the following occurred:

> " I don't think I testified I gently lifted his arm. I don't remember my exact words, but I said I pushed his arm". . . (R. 84-102, 107-112).

Furthermore, the victim's testimony shows the following occurred prior to petitioner's reaction to the battery to his persons:

> Q.    "And according to your statement, after you pushed Mr. Baker's arm the second time, he said, "Don't shove me," and that's when he shoved you back---
>
> A.    Yeah.
>
> Q.    --or pushed you back?

7

> A.    I'm not sure if he said don't shove me or don't touch me. . .
>
> Q.    "And you leave no room for the possibility that Mr. Baker was feeling threatened by you pushing him"
>
> A.    I have no idea what Mr. Baker was feeling.
>
> Q.    But you can't exclude the possibility, right?
>
> A.    I can't tell you what he was feeling. (R. 92).

In determining whether the facts of a particular case satisfy the *Jackson* standard, it is necessary to refer to the essential elements of the crime as defined by state law. Ala. Code § 13A-11-8(a)(1) provides: A person commits the crime of harassment if, with intent to harass, annoy, or alarm another person he or she either (a) Strikes, shoves, kicks, or otherwise touches a person or subjects him or her to physical contact. Certainly, this Honorable Court may depend on the police victim's testimony.    More importantly, Petitioner's testimony supports the victim's testimony:

> Q.    And when you walked over to the grill, what did you see?
>
> A.    I saw sausage, steaks, looked like pork chops, and maybe even hamburgers on there.
>
> Q.    And at that point, what did you do?
>
> A.    I just reached for the tools, the fork or the tools, whatever it was. And from behind—I was kind of sideways, and from behind, Mr. Williamson (the victim) assaulted me.
>
> Q.    By that, what do you mean?
>
> A.    He grabbed me and tried to manhandle me.

8

As petitioner's examination continues, the evidence adduced shows, when petitioner went to "that grill, was it your intention to have any dealings with Bob Williamson (the victim), Petitioner answered:

A.    "None whatsoever. I was under the impression that I was welcome to have the food. I was under the impression that I could participate fully, but for Mr. Dennis Riley and Mr. Bob Williamson.

Q.    Okay. This steak that you say you were reaching for, did you at that time know that steak belonged to someone else?

A.    No, Sir. No, Sir.

Q.    Mr. Williamson said you can't have that steak or don't touch my grill, did you believe he had the authority to tell you that?

A.    I didn't believe he had the authority to tell me that; furthermore, he did not tell me that. He told me, after he had initiated physical contact with me, not to touch the grill. I assured him after having him—getting aloose from his grasp, I wasn't going to touch the grill, I just wanted the food. And he again initiated physical contact on my persons. I nudged Mr. Williamson away from me, and he rushed back up on me. In the process, of that, the steak fell on the ground. And that's all it was. I thought the issue was dead. And they come up with this complaint.

Q.    At the time when you say Mr. Williamson grabbed you, did you feel threatened by that?

A.    Yes, sir.

Q.    Did you feel like—what did that make you feel in regard to your personal safety?

A.    I felt like—I felt like I was in imminent harm or threat of imminent harm from the way Mr. Williamson and the way Mr. Riley had already treated me and the way he looked like stalking me, (R. 227).

Petitioner testified he felt threatened by the alleged victim for his personal safety. Furthermore, contrary to the portrayal of petitioner's demeanor, the record shows petitioner's demeanor was in fact, good, Mr. Sam Green testified:

> "Petitioner's demeanor was good and "I just was sure he was going to stay until the courthouse opened." "Petitioner was in a good mood" (R.128-129).

Mr. Curtis Blair testified that petitioner was cordial, he testified: "Just cordial greetings" (R.194). Not one single prosecution witness collaborates the alleged victim's deposition and testimony, which is the foundation of the offense. In fact, Mrs. Myra Ellis (Pike County Personal Director) and Mr. Curtis Blair (Revenue Commissioner) were in the best position to see and hear the events leading up to the alleged harassment, Mrs. Ellis testified:

> Q.    Mrs. Ellis, what did you observe take place between Jeffery Baker (petitioner) and Bob Williamson (alleged victim)?
>
> A.    As far as words, I did not hear them, but they were talking. And Mr. Baker walked up to Bob and body shoved him" (R. 113).

According to the alleged victim's deposition (CR. 7-8) and his testimony, (R. 84-102, 107-112) he had pushed petitioner not once by twice, nevertheless, Mrs. Ellis didn't see petitioner being pushed by the alleged victim, likewise, she didn't hear any loud demeanor of petitioner. Mr. Curtis Blair testified:

> Q. "    Now when you said they were kind of at—I believe you said at each other. Were they both pushing one another, to your knowledge? Is that what you saw?
>
> A.    "Well, I just saw them butt up to one another."

According to the testimony of Pike County's Revenue Commissioner, Mr. Blair, the petitioner and the alleged victim butted "up to one another."

The Due Process Clause of the Fourteenth Amendment prohibits a criminal conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime. The Court instructed Petitioner's jury on petitioner's culpable mental state, and the necessary intent to establish the charged offense, ( R.R. 294). *In re Winship*, 397 U. S. 358, 364 (1970) habeas relief is available on the claim, when, as here, the record evidence adduced at trail shows no rational trier of fact could have found proof of guilt beyond a reasonable doubt.    Based upon the above, and according to 28 U. S. C. § 2254 (d) (1) & (2); *Williams v. Taylor*, 529 U. S. 362, 404-05 (2000), *Jackson v. Virginia,* 443 U. S. 307, 324 (1979); *In re Winship*, 397 U. S. 358, 364 (1970), and *Anders v. California*, 386 U.S.738, S.Ct. 1396, 18 L. Ed. 2d 493 (1967), the decision by the state Court was based on an unreasonable determination of the facts, in light of the evidence presented, and/or contrary to clearly established federal law as determined by the United States Supreme Court.

### *Ineffective assistance of Counsel*

The Magistrate's Recommendation points to three occurrences where petitioner contends trial counsel was ineffective, however, the recommendation fails to address ground (c):

(a). When counsel's sudden illness impaired his mental and physical functioning thereby depriving petitioner of a jury composed of a fair cross section of the community and his right to favorable witnesses;

(b). When trial counsel failed to admit two of the state's exhibits which were used to impeach Petitioner's testimony which resulted in the jury not being able to consider the documents; and

(c). When trial counsel failed to advance Petitioner's defense strategy.

11

Consequently, "to show a violation, Petitioner must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy, *Strickland, 466* U. S. at 686; *Williams,* 529 U. S. at 390. In assessing the performance of counsel, the court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. With regard to the prejudice requirement, Petitioner must establish that, but for counsel's deficient performance, the outcome of the proceedings would have been different.

Despite the Magistrate's rational, the cumulative effects/affects of counsel's performance prejudiced petitioner's trial. First, Petitioner's previous jury failed to reach a verdict on the harassment charge. Without aid of Sixth Amendment counsel, the previous jury refused to convict the Petitioner of harassment. Here, counsel appeared the day of Petitioner's trial late. Counsel hurriedly and surreptitiously dismissed Petitioner's witnesses. Because of his sudden illness, Counsel had no passion for petitioner's cause. As the recommendation shows, counsel did raise a Batson motion. However, the record reflects that after certain jurors were struck for cause "without objection" the State and defendant were given time to select a jury. After the jury was seated, the following discussion took place.

MR. TAYLOR: Your honor, we would make a motion—it would appear from the strikes that the strikes were disproportionately based on race. And we would ask for clarification with regard to out of 10 out of 18 strikes were based on race on a Batson issue. We would raise a Batson issue on that, Judge.

THE COURT: Do you have anything that you want to put on in that regard, other than your argument.

12

MR. TAYLOR: Just our argument.

THE COURT: Mr. Whigam.

MR. WHIGHAM: Judge, the State's position is there is no prima facie case of Batson in this case. There are five blacks on the jury. That's consistent with what the panel was when we started the panel. And it's just they have not met the prima facie case.

THE COURT: yeah. It's just a statement without any evidence, and I would tend to agree with Mr. Whigham. There are five African-Americans on this jury panel. And the defendant has not made a prima facie showing regarding Batson issue and the Motion is denied. The Magistrate's Judge stress that the presence of black jurors on Petitioner's jury panel, while significant, does not necessarily preclude a finding of racial discrimination." *United States v Allison, 908 F. 2d 1531, 1537 ( 11th Cir. 1990).* (fn. 9 pg. 20). Again, this claim was suitable for appellate counsel to advance on appeal, *Anders.* While the Magistrate was cognizant that the presence of black jurors does not necessarily preclude a finding of racial discrimination, Petitioner's trial coursel and his appellate counsel should have determine likewise, *Johnson v. Dugger.* The *Batson issue* has actual and/or arguable merit. In addition, petitioner raised the *Batson* issue in his sworn motion for new trial. Appellate counsel was obligated the raise all actual or arguable issues in the petitioner's appeal.

Next, the Magistrate assert, Petitioner may not simply state a putative witness testimony would be favorable" . . . testimony of putative witness must be presented in form of "actual testimony" or affidavit." Appointed Counsel failed to call favorable witnesses, namely, two state troopers, Russell Thomas, Kathy Waters; Jake Wingard and former Judge McAliley."

Despite the Magistrate's rational, counsel had prior knowledge that these witnesses could provide favorable testimony. In fact, he subpoenaed them. Petitioner's right to "have access to an available witness whose evidence is relevant is of a constitutional dimension" *U. S. v. Alonso,* 740 F2d. 862 (11th Cir. 1984). The fact that petitioner record evidence shows a letter written to counsel outlining his defense and citing a tape recordings of the incident held by Russell Thomas is worth a 1000 words here. (CR. 487-489).

Next, the Magistrate suggest: "former Judge McAliley's testimony from a prior criminal proceeding involving petitioner was read into the record. That by stipulating to this witness prior testimony; Petitioner's reputation for truth and veracity in the community was good but only up until the date of the event was just as good as the actual witness. The Magistrate stress, to successfully assert trial counsel should have called a witness, a petitioner must first make a sufficient factual showing substantiating the proposed witness testimony. The record evidence shows trial counsel excluded the testimony of District Attorney, Gary McAliley, who testified in petitioner's previous jury trial that resulted in a non-verdict.

> The Court:    And, Mr. Whigham, is that so stipulated?
>
> Mr. Whigham: Yes, Sir. The only thing that the state would ask is this would be prior to September 6, 2002.
>
> Mr. Taylor: We would agree with that statement.
>
> The Court: And you understand then the addition to that stipulation that that reputation regarding general reputation and truth and veracity was prior to September 6, 2002?
>
> Mr. Taylor: yes, Your Honor. (R. 265)

The prosecution's objection (R. 210) shows District Attorney McAliley previous testimony was favorable, but as the prosecutor rightly says the previous testimony:

> "Went into specifics about, you know, Mr. Baker's relationship with him and that kind of thing, **rather than just saying that, you know**, his general reputation in the community, (R. 210).
>
> THE COURT: Yeah. It was a little broader than that, but, you know, It's either that ---It's either that transcript or me having to force Mr. McAliley here, Which, I mean, I'm not keen on doing, but, you know, (R. 210).

In order to get around the client strong desire to have the favorable witness presence, Petitioner was ordered to "return to the defense table" (R. 261) and while out of the hearing and presence of the petitioner, counsel entered the petitioner into a stipulation agreement (R. 261-65). Petitioner insisted that the previous testimony be read into the record or that his Sixth Amendment Right to compulsory process issue. Moreover, the record evidence shows a letter written to counsel outlining petitioner's defense plan and requested the previous witnesses be subpoenaed. (CR. 487-489). Counsel's stipulation agreement paints petitioner's demeanor as good but only up to the day of the incident. The prosecution stressed petitioner's demeanor and size to color petitioner as an angry black man.

*Please take judicial notice*, Petitioner submits, if compulsory processes fails to obtain favorable witnesses testimony, how might the pro se unlearned petitioner obtain affidavits the Magistrate suggest? Counsel had prior knowledge that petitioner was granted a six-month internship with the former Judge McAliley, after the September 6, 2002 incident. Furthermore, after former Judge McAliley became District Attorney, after the incident above, held a pretrial conference with the petitioner in which a favorable plea

15

was extended. Counsel knew petitioner had a good enough reputation after September 6, 2002, to process cases for the District Attorney McAliley's Office. Petitioner's trial attorney had full knowledge of this fact, as did petitioner's appellate counsel. Petitioner presented the issue in his sworn motion for New Trial. Clearly, petitioner has not received a full and fair trial or appeal in this matter. The Magistrate's Recommendation mandates that the petitioner do what trial and appellate counsels should have done. Now, as the Magistrate insists, without compulsory process issued by this Honorable Court, petitioner is powerless to provide affidavits from the witnesses herein named, Pike County Sheriff Russell Thomas, District Attorney McAliley, two unknown State Troopers. Petitioner was circumvented at trial by his counsel in violation of his Sixth Amendment Right to have trustworthy witness appear and testify. Without doubt, petitioner letter, recorded in the record at (CR. 487-489), shows petitioner's trial was prejudiced by his court appointed counsel. The dismissal of key defense witnesses by counsel violated petitioner's right to a fair trial; mandated by the Sixth Amendment to the United States Constitution. "Where the facts are in dispute, the federal court in a habeas corpus must hold an evidentiary hearing if the habeas applicant did not receive a full and fair evidentiary hearing in a state court either at the time of the trial or in a collateral proceeding," *Townsend v. Sain,* , 372 U. S. 293, 319 (1963); Habeas Corpus Rules, Rule 8; U. S. Const Amend. 6, 14. With

Next, with regard to the two State exhibits marked for identification and used to impeach petitioner's testimony. The Magistrate concludes, because the jury heard testimony from both the prosecution and defense witness including petitioner; Petitioner

16

failed to indicate what significant evidence was contained in the exhibits which was not or could not be elicited through direct or cross examination.

Contrary to the Magistrate's reasoning, exhibits 3 and 4 are two Affidavits of the Petitioner marked for identification by the prosecution. (R. R. 232) According to the record before this Honorable Court, the prosecution claims the petitioner's two affidavits "expounded the story" (RR 236). On redirect the defense never sought to correct the damage done to petitioner and the petitioner's affidavits. Secondly, counsel failed to admit the affidavits into evidence for further inspection by the jury. Petitioner's jury was instructed to consider the stipulation along with all other evidence in the case to arrive at the verdict, (R. 263-64). More significant, the State's exhibits 3 and 4 shows the events of September 6, 2002 from the incident up to and including the barriers placed before petitioner by the issuing Magistrate and the former District Attorney's office. Furthermore, the Petitioner's affidavits are made part of the record for the Court's Review. The Magistrate conclude, petitioner failed to establish that the State court's decision rejecting petitioner's challenge to trial counsel's performance was contrary to the *Strickland* standard or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Petitioner is not entitled to habeas relief on the claim. Nevertheless, had the State's exhibits been provided to the petitioner's jury for inspection, clearly the jury would have known that one affidavit detailed the harassment charge and the other specially expounded on the steak or the criminal mischief in the third degree.

Lastly and more importantly, the Magistrate's Recommendation fails to address petitioner's significant claim that trial counsel failed to advance Petitioner's defense

strategy although the magistrate denominate the claim as 4 (C) under the heading ineffective assistance of counsel. (Mag. Recomm. Pg. 2). Petitioner hereby adopts and incorporates the letter contained in the record at (CR. 487-489) as evidence and as if fully set out herein.

Petitioner's defense strategy was clearly set forth by the petitioner to his Appointed Counsel. In fact, Petitioner injected a letter in the record because counsel failed to meet with or advance any defense strategy with his client prior to the trial (CR. 487-489). Swiftly, counsel appeared the day of trial suddenly stricken and thereby surreptitiously dismisses petitioner's key defense witnesses. These witness were central to the Petitioner's defense strategy. The letter specifically insisted on Petitioner's proven defense approach. The letter contains specific information and/or the place where relevant documentation(s) could be located and all tending to support petitioner's asserted defense strategy. As started in, *Fortenberry v. Haley*, 297 F. 3d. 1213, 1228 (11th Cir. 2002), "Defense counsel renders ineffective assistance when it fails to investigate adequately the sole strategy for a defense or to prepare evidence to support that defense. Additionally, Counsel performance in failing to assert petitioner's proven defense strategy prejudiced petitioner's case (CR. 487-89). In *Faretta v. California*, 422 U. S. 806, 95 S.Ct.2525, 45 L. Ed. 562, the Supreme Court held: "

> "It is true that when a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas. This allocation can only be justified, however, by the defendant's consent, at the outset. . . citing, *Henry v. Mississippi*, 379 U. S. 443, 451, 85 S. Ct. 564, 569, 13 L. Ed. 2d. 408; *Brookhart v. Janis*, 384 U. S. 1, 7-8, 86 S. Ct. 1245, 1248-1249, 16 L. Ed. 2d. 314; *Fay v. Noia*, 372 U. S. 391, 439, 83 S. Ct. 822, 849, 9 L. Ed. 2d. 837.

18

Further, the Rules governing Client-Lawyer Relationship, Rule 1.2 specifically state, both lawyer and client have authority and responsibility in the objectives and means of representation. Accordingly, the petitioner has a say in the objectives and means of his trial counsel's representation. Nevertheless, counsel dismissed witnesses whom he knew would provide favorable testimony. Counsel's failures denied petitioner the opportunity to present a full and complete defense; a defense strategy effectively established in Petitioner's previous trial. Trial Counsel's sudden illness affected counsel's judgment in dismissing petitioner's favorable witnesses. Sheriff Russell Thomas was at the incident; the Petitioner personally communicated with Sheriff Thomas at the incident. Petitioner appeared before the sheriff and sought criminal charges against the alleged victim just moments after the incident. Counsel had personal knowledge of what was said between Sheriff Thomas and the petitioner. Presumably, Sheriff Thomas, while under oath, would testify as to his observations and conversations with petitioner at the incident, and account for taped recordings never presented to the defense. Petitioner's demeanor as well as his intentions would have been made a part of the record for consideration. Nevertheless, the record shows the following:

> MR. TAYLOR: We understand there is a conflict for the Sheriff. However, my client has instructed me to post an objection for the record. And we understand he's going to be gone, but he feels like he is a witness that he would need to call.
>
> THE COURT: Okay. All right. well, I just released him based on what you had told me a minute ago, so he's gone.

Furthermore, at some point, Jake Wingard and Kathy Waters were also dismissed. The Petitioner and Jake Wingard were engaged in conversation just prior to the alleged harassment. Wingard like Sheriff Thomas had personal knowledge of petitioner's actions and demeanor prior to and after the alleged harassment. Petitioner's Counsel has personal

19

knowledge of the expected testimony, yet Counsel's purported illness arrested petitioner's compulsory process to have favorable witness appear and to testify. Why? While the petitioner recognizes Russell Thomas important position, his action on the day in question was highly relevant and prejudicial to the trial's outcome. In *McKinzy v. Wainwright*, 719 F2d. 1525, (11th Cir. 1983) the court held: the right to confrontation is one of the minimum essentials for a fair trial. Unconstitutional limit of cross-examination is not cured simply by acknowledging that other means of impeachment were possible and permitted. Counsel's decision to undermine Thomas's attendance and petitioner's clearly delineated defense plan at trial shows counsel was not functioning as the attorney contemplated by the Sixth Amendment.

The Record shows the objection regarding Russell Thomas dismissal, (R. 53) and counsel's stipulation agreement (R. 261-65). Petitioner was ordered to return to his seat, (R. 261-65), whereat court appointed counsel agreed to stipulate petitioner's case in principal. Counsel thwarted petitioner's clearly delineated defense strategy. As stated above, "unconstitutional limit of cross-examination is not cured simply by acknowledging that other means of impeachment were possible and permitted." *Wainwright.* Additionally, Counsel's discovery failures denied petitioner the opportunity to present a full and complete defense. Had counsel subpoenaed the production of documents and taped recordings, petitioner's acquittal is likely, given the first trial ended in a hung jury (emphasis added). Based upon petitioner's clearly outlined defense plan (CR. 487-489) and given that the first trial ended in a hung jury, petitioner's trial was reduced to fraud and a role-play. Petitioner's clearly describe defense strategy was prejudiced by the appointed counsel. Trial counsel's performance was contrary to the

20

*Strickland* standard; or the state court's decision in upholding the appellate counsel's *Andes* brief is based on an unreasonable determination of the facts in light of the evidence presented, see also, *Faretta*; and Const. Amend. 6, 14; the Alabama Rules of Attorney Client Relationship, and *Jackson v. Virginia,* 433 U. S. 307, 324 (1979).

### *Selective/Vindictive Prosecution*

The Magistrate asserts, to establish a claim of selective prosecution, petitioner must show he was singled out for prosecution while others similarly situated, have committed the same act and have not been prosecuted and that he was invidiously selected for prosecution. *Jones v. White,* 992 F. 2d 1548, 1571 (11th Cir. 1993). To establish a vindictive prosecution claim, petitioner must show: (1) the prosecutor acted with genuine animus and (2) the defendant would not have been prosecuted but for that animus, *United States v. Goodwin,* 457 U. S. 368, 372 (1982). The Magistrate says, petitioner failed to present or identify any unjustifiable standard underlying the state's decision to prosecute the petitioner. Likewise, the vindictive prosecution claim is no more than a bare assertion that the harassment charge against petitioner was manufactured as a means by which Pike County personnel would not have to enforce violations against themselves. Essentially, the Magistrate finds no evidence in the record to support a presumption of improper motive in prosecuting the petitioner. Additionally, he finds no evidence that the harassment charge was fabricated. Based on his findings, Petitioner's selective/vindictive prosecution claims were neither contrary to controlling federal law nor an unreasonable determination of the facts in light of the evidence, § 2254 (d).

Contrary to the Magistrate's conclusion, the Fourteenth Amendment ensures the petitioner shall not be deprived of life, liberty, or property without due process of law,

21

nor will he be denied the equal protection of the laws." Likewise, the Fourth Amendment
(. . .) requirement that "No warrants shall issue, but upon probable cause, supported by
oath or affirmation describing the place and persons to be seized."    The Fourth
Amendment applies to search as well as arrest warrants, <u>Whiteley v warden Wyoming</u>
<u>State Penitentiary</u>, 4 U.S. 500, 91 S.Ct.1081, 28 L. Ed. 2d 306 (1971). To prevail on his
equal protection claim of vindictive prosecution, petitioner must show (1) the prosecutor
acted with genuine animus and (2) the defendant would not have been prosecuted but for
that animus, *United States v. Goodwin*, 457 U. S. 368, 372 (1982). Here, the prosecution
was initiated with intent to punish petitioner for his exercising of his protected rights to
defend/complaint for his federal and state law rights. Petitioner is denied his rights while
the alleged victim is sustained by court officials charged with the laws administration
without regard.

First, petitioner was charged by complaint issued by the alleged victim in this
case, Bob Williamson, a drug investigator with the Pike County Sheriff Department.
Here, petitioner claim of vindictive prosecution rests with the issuing magistrate, Brenda
M. Peacock. Mrs. Peacock refused petitioner his statutory right to commence a complaint
in accordance with established law, Ala. Code §§ 15-7-2, and §15-7-3. "Personal
vindictiveness" on the part of a prosecutor or responsible member of the administrative
agency recommending the prosecution suffice to satisfy the second element of the
showing, <u>United States v. Bourque</u>, 541 F. 2d 290, 293 (1st Cir. 1976); <u>Moss v. Hornig</u>,
314 F. 2d 89 (2nd Cir. 1963). Petitioner appeared before the Magistrate, Brenda M.
Peacock, to institute a complaint for injuries sustained by the alleged victim September 6,
2002, the actual date of the harassment.  Alabama law dictates how a complaint is to be

commenced in Pike County. Petitioner provided the issuing official with the factual details and cited the violations, nevertheless, three days later; the alleged victim appeared before the same said Magistrate Brenda M. Peacock setting forth the same set of facts. Next, according to clearly established law, only a neutral and detached judge or magistrate may issue warrants in Alabama. Pike County District Judge William Hightower disqualified himself pursuant to Cannon 3 (C) (1) on September 12, 2002, (CR. 17); in addition, two Coffee County district judges recused. Petitioner has lodged at least three complaints, supported by affidavit, to the Administrative Director of Courts and the Alabama attorney General regarding the issuing magistrate, Brenda M. Peacock and her staff. Petitioner has prevailed in a suite at law against the magistrate's business, Peacock Timber Company, Pike County Case No. CV-92-307-M. Certainly, if three district judges whom the petitioner has never met disqualified themselves in the case, the issuing Magistrate was certainly required to do so. Furthermore, the magistrate testified that: "He (petitioner) has caused us concern in our office by his actions" (R. 251); nevertheless, Magistrate Brenda M. Peacock has never known Petitioner "to be not be truthful." (R. R. 251). To this date, despite the petitioner's truthfulness, he has not been afforded his constitutional and state law rights to complaint against the alleged victim, Bob Williamson.

Alabama Code §§ 15-7-2 and 15-7-3 provide:

(a) "Upon a complaint being made to a judge or magistrate that an offense has, in the opinion of the complainant, been committed; the magistrate must examine the complainant and such witnesses as he may propose on oath, take their depositions in writing and cause them to be subscribed by the person making them.

23

(b) The depositions must set forth the facts stated by the complainant and his witnesses tending to establish the commission of the offense and the guilt of the defendant. Ala. Code § 15-7-2

Ala. Code. §15-7-3 provide: If the judge or Magistrate is reasonably satisfied from such deposition that the offense complained of has been committed and that there is reasonable ground to believe that the defendant is guilty thereof, he must issue a warrant of arrest.

Not unlike the alleged victim, petitioner appeared before the same Magistrate, Brenda M. Peacock on September 6, 2002, that an offense had, in the opinion of the petitioner, been committed against his persons; the magistrate refused to examine the Petitioner or his witnesses. In fact, the issuing Magistrate testified she needed an investigation in order for petitioner to institute a complaint pursuant to Ala. Code §15-7-2 and §15-7-3, (R. 250-51). Contrary her testimony, Alabama Code §15-7-2 and §15-7-3,) does not require an investigation to institute a complaint. The record before this Honorable Court fails to show any investigation required by the alleged victim to commence a complaint against the petitioner. The alleged victim's deposition is readily accepted while the petitioner, known for his truthfulness is readily dismissed.

Contrary to the Magistrate's contentions, the alleged victim's charge against the Petitioner is the "analogous harassment charge." Petitioner appeared before the issuing Magistrate the day of the harassment, September 6, 2002 at 1:00 P. M. C.S.T. Petitioner was denied Constitutional Rights in violation of the Fourteenth Amendment to the United States Constitution as well as the Alabama Constitution of 1901, while the alleged victim is sustained. Additionally, after the alleged victim commence his complaint under Ala. Code 15-7-2 and §15-7-3, on September 9, 2002; the Pike County District Attorney and his staff disqualified themselves from prosecuting the case (Cr, 71). Petitioner's affidavit filed in the District Attorney's office regarding the September 6, 2002 harassment sets

forth the entire incident. Furthermore, the petitioner's affidavit details how the Magistrate refused petitioner his right to commence a complaint pursuant to Ala. Code §15-7-2 and §15-7-3. Additionally, Petitioner sought the removal to the United States District Court (C. R. 27-34); see *Alabama v. Baker,* 222 F. Supp. 2d 1296 (M. D. Ala. 2002), see also 2: 04cv1085-T, (Cr. 419-432) these documents are sworn documents. The testimony of the Petitioner and the victim shows that the victim's charge is not unlike petitioner's charge. However, petitioner had visible injuries and emotional duress to support his charge. Petitioner was not only pushed once but twice. Additionally, Petitioner was verbally harassed by the victim's confederates in violation of Ala. Code, 13A-11-8 (b). Despite the Magistrate's "independent review" of the record, Petitioner's affidavits show petitioner was not only harassed by the alleged victim, he was further harassed after the incident and threatened with physical harm. Yet, petitioner is refused a constitutional and state law right to complaint against unlawfulness occurring at the Pike County Courthouse.     The Magistrate characterize petitioner as "seeking to file "analogous harassment charge," nonetheless, petitioner was injured as a result of his harassment and sought the harassment charge on the date of his harassment, September 6, 2002 at 1:00 P. M. Additionally, the Magistrate says he independently reviewed the record. Ironically, if petitioner harass the victim; the victim at the least harassed petitioner first. More importantly, the facts are indistinguishable. If the alleged victim is sustained in his complaint, he at least harassed petitioner first. The magistrate accepts the victim complaint three days after the fact and refuses petitioner's complaint the day of the incident. Again, the facts are indistinguishable. When the Petitioner first appeared before the magistrate on September 6, 2002, he had visible injuries. According to the Mrs.

25

Peacock's testimony, petitioner was, "irate."(R. 248), however, petitioner says he was in emotional duress.

Next, and more interestingly, the Magistrate say, " he finds no evidence in the record to support the allegation that the harassment charge was fabricated." The alleged victim's deposition and his testimony contradict the magistrate's assertion in this regad. Furthermore, the prosecutions witnesses contradict the victim's deposition; see Myra Ellis (R. 112-15); Curtis Blair (R. 192-98). The trial court instructed the jury on to the law, §13A-3-26, as it relates to the defense of property other than premises and its inapplicability:

> "Now as I said, there are a couple of other statutes that come into play, and I want to touch on those briefly. Under 13A-3-26, the Alabama Code says this: A person is justified in using physical force, other than deadly physical force, upon another person when and to the extent that he reasonably believes it to be necessary to prevent or terminate the commission by the other person of theft or criminal mischief with respect to property, other than premises, *which is not applicable here,*" (emphasis added) (R. 294-295).

Likewise, there is no evidence in the record that this Honorable Court can point to that Petitioner's specific intent was to harass the alleged victim, police victim under the evidence adduced at trial. This Honorable Court must conclude that the fabrication occurred, because no reasonable person would believe the petitioner pushed an armed white deputy sheriff in the chest with both hands causing him to fall 12 feet against a table, turn his back, threw a steak on the ground causing it to break into three and then walk away. Here, the Magistrate; a rational trier of facts, conclude, the petitioner, a 47-year-old black male, appeared at the Pike County Courthouse where he happened upon a police party. Petitioner then proceeded to exhibit disruptive behavior at such party, which culminated into petitioner pushing a white police officer (the victim) in the chest

with both hands, (statement & deposition C.R. 4-9). Petitioner's violent eruption caused the white police victim to fall "12 foot" (R.R. 196) on a table. Yet, the petitioner remained at the police party and was provided food and drink and was never arrested or asked to leave the premises. The calculated restraint employed by the various police departments on site September 6, 2002 should be duplicated as a model for the nation. Here, "police engaged in illegal activity beyond the scope of their duties the remedy lies, not in freeing the equally culpable defendant, but in prosecuting the police under the applicable provisions of state or federal law." *Hampton v. United States*, 425 U. S. 484, 96 S. Ct. 1646, 48 L. Ed. 2d 113. Petitioner is prevented from filing his complaint by Pike County's "gate keeper" Magistrate Brenda M. Peacock, yet, Bob Williamson is allowed under the same set of facts.

Accordingly, the appellate court decision adopting Appellate counsel's *Anders* brief and thereby forgo a written decision explaining the Court's rational is contrary to controlling federal law and/or is an unreasonable determination of the facts in light the evidence. *United States v. Goodwin*, 457 U. S. 368 (1992); *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), *Jackson v. Virginia*, 433 U. S. 307 (1979); *Beverly v. Jones*, 854 F. 2d 412 (11th Cir. 1988), *Blackledge v. Perry*, 417 U. S. 21, 94 S.Ct. 2098 40 L. Ed. 2d 628; *North Carolina v. Pearce, 395 U. S. 711, 89 S.Ct. 2072, 23 L. Ed. 2d 656.*

## Trial Judge Bias

Here, the Magistrate says, "to be a disqualifying factor, the bias must be personal and of a deep rooted animus that a fair minded person could not be expected to set it aside in judging a certain person or cause before the court. The Magistrate assert,

petitioner cites to no detrimental or prejudicial rulings by the trial judge nor does he point to any areas where the trial judge gave an appearance of bias in his rulings. The mere allegation of judicial bias or prejudice unsupported by references to the record cannot in and of itself establish a federal constitutional violation. Accordingly, petitioner's claim was denied because petitioner did not show, as required by §2254 (d) the appellate court decision rejecting the claim was contrary to federal law or an unreasonable determination of the facts in light of the record evidence.

Despite the Magistrate's Recommendation, Houston County Case CC-97-509-A arose in the Pike County District Court as DC- 97-43, wherein the alleged victim provided the basis for contentions of fraud, and the factual basis for contentions prosecutorial and judicial misconduct requiring all judges of the 12th and 20th judicial circuits of Alabama to recuse. It is the contention of petitioner that animus stem from petitioner's challenge(s) to the bench and bars of Pike and Houston Counties, the same resulted in the recusal of all circuit and district judges in the said counties. Additionally, Petitioner is sentenced to 90 days, and over $1100.00 in fines and fees with two years probation, and anger management classes. Initially, "Circuit Judge" Thomas Head presided in the matter in the district court. Judge Head, at the time, was the presiding judge for the 12th Judicial Circuit of Alabama. Petitioner was fined only $100.00, upon the district court's conviction, see Circuit Judge Head above. Additionally, the first Circuit Court Jury Trial de novo, failed to return a verdict in the harassment charge. However, upon conviction in the retrial, before Judge Anderson, Petitioner was immediately imprisoned and served 21 days before the judge issued petitioner an appropriate appeal bond, see also *United States v. Don Sigaelman,* cite omitted. Judge

Anderson presided in Petitioner's previous jury trial in which petitioner's jury failed to return a verdict in the harassment charge. Although the Circuit court is not bound by the district court's sentence, the disproportionately of judge Anderson's sentences for a offense of this nature, shows the court's disdain for petitioner's appeal. The sentence here imposed has nothing at all to do with the gravity of the offense. Furthermore, at a pretrial hearing, Judge, Larry K. Anderson appeared without a court reporter and made clear his intention to "dispose of petitioner" (CR.223-25). Despite the Magistrate's assertion, the record evidence here shows petitioner's motion to dismiss the complaint was circumvented by an uncommon court practice, (CR.223-25). Contrary, to the magistrate's contention: "that the mere allegation of judicial bias or prejudice unsupported by references to the record cannot in and of itself establish a federal constitutional violation." Additionally, the record shows that Judge Anderson denied and/or dismissed each and every motion petitioner submitted.  A fair trial in a fair tribunal is a basic requirement of due process, and requires an absence of actual bias in the trial of cases. The interest that will disqualify a man from trying a case depends on circumstances and relationships, *In Re Murchison*. Further, Petitioner's sentence shows a clear animus with due regards to the gravity of the offense and the fines and punishment inflicted. Irrespective of statutory limits, Alabama law, Rule 26.8 provide the sentence imposed in each case should call for the least restrictive sanction that is consistent with the protection of the public and the gravity of crime.  Furthermore, the Eighth Amendment to the U. S. Constitution, provide, excessive bail shall be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted. Petitioner's fines and fees exceed $1100.00 Additionally, petitioner was sentenced to a term of 90 days suspended but for 30 days to

serve with two years probation. Petitioner was immediately imprisoned. Additionally, petitioner was a full-time student and was forced to withdraw from classes due the 30-day sentence imposed, not to mention the course fees lost because of the unusual punishment inflicted. Because the appellate counsel *Anders* brief failed to procure the argument of counsel, previously ordered by the Petitioner, this Honorable Court may not make a proper determination on this claim. As such, the appellate court's decision rejecting the claim was contrary to federal law or an unreasonable determination of the facts in light of the record evidence, *Williams v. Taylor,* 529 U. S. 362 (2002); *Anders v. California,* 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967); *Strickland v. Washington,* 466 U.S. 687, 80 L.Ed. 2d 674, 104 S. Ct. 2052 (1984), *Liteky v. United States,* 510 U. S. 540 (1994).

*Batson Violation*

Here, the Magistrate assert, petitioner's mere contentions that the prosecutor exercised his peremptory challenges to remove blacks from the jury panel is insufficient to make out a prima facie case of purposeful discrimination. Citing *United States v. Young-bey,* 893 F. 2d 178, 179 (8th Cir. 1990) "numbers alone are not sufficient to establish or negate a prima facie case. Also citing, *United States v. Allision,* 908 F. 2d 1531, 1538 (11th Cir. 1990).

Despite the Magistrate's reasoning, Petitioner was represented by counsel, both, at trial and on appeal. The Magistrate points to the record evidence to reject federal review. In so doing, he says, the courts decision rejecting Petitioner's *Batson* Challenge was not contrary to clearly established federal precedent nor an unreasonable application of the facts in light of the evidence presented. However, notwithstanding the presence of

30

black jurors on petitioner's jury panel, the magistrate is cognizant that such presence, while significant, does not necessarily preclude a finding of racial discrimination citing, *United States v. Allision.* While this is true, the state court's decision rejecting petitioner's Batson challenge is based on appellate counsel's Anders *v. California,* brief.  As the magistrate recognized, blacks on petitioner's jury does not necessarily preclude a finding of racial discrimination. According to *Powers v. Ohio,* 499 U. S. 400, 402 (1991), a *Batson* challenge has three distinct steps. First, the defendant must establish a prima facie case of discrimination. If the defendant makes the requisite showing, then the burden shifts to the prosecution. The prosecutor's proffered reasons need not be persuasive or even plausible. Next, the trial court has the duty to determine if the defendant has established purposeful discrimination. Here, as the Magistrate rightly states, . . . "certain jurors were struck for cause without objection." Then, trial counsel makes a *"Batson* motion" without the requisite showing. The court asks whether appointed counsel wanted to put on any evidence.  Petitioner trial counsel provided nothing but "mere conjecture" which the court characterized as "just a statement without evidence." The Prosecution proffered his reasons which the court adopted.  Nevertheless, the Magistrate says: the petitioner argues the prosecutor failed to elicit for the venire during voir dire any race-neutral reasons for striking the black veniremen, such raises an inference that the prosecutor used his peremptory challenges to strike blacks from the jury venire solely on account of race. He does not, however, point to any other facts or reasons to support the claim that an inference of discrimination has been raised. In siding with the state court's decision rejecting the Petitioner's *Batson* challenge, the recommendation rejects counsel performance at the trial and on appeal. Counsel's performance, is however, contrary to

clearly established federal law and/or the state court's decision in adopting appellate counsel's *Anders* brief is an unreasonable application of the facts in light of the reviewable evidence; *Williams v. Taylor,* 529 U. S. 362 (2002); *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967); *Strickland v. Washington*, 466 U.S. 687, 80 L.Ed. 2d 674, 104 S. Ct. 2052 (1984). Clearly, the record evidence shows veniremen born before 1977 were excluded or struck by the prosecutor and all other black veniremen chosen were government employees and/or their spouses. Petitioner's jury was not representative of a fair cross section of Pike County. Petitioner submits the issue is actual or arguable on the merits and the appellate counsel *Anders* brief is contrary to clearly established federal law or the adoption of appellate counsel's *Anders* brief is an unreasonable application of the facts in light of the reviewable evidence.

*Excessive Sentence*

The Magistrate's Recommendation says a state's interpretation of its own laws and rules provides no basis for federal habeas corpus relief. If the sentence imposed by a state court is within the range established by state law, its severity is not sufficient grounds for relief on federal habeas corpus. Since the court, sentenced petitioner to ninety days for his conviction for harassment, a class C misdemeanor, but suspended the sentence and ordered petitioner to serve thirty days. The sentence does not exceed the statutory maximum of three months prescribed.

Despite the Magistrate's conclusion, Petitioner was sentenced to 90 days, and over $1100.00 in fines and fees with two years probation, and anger management classes. Initially, "Circuit Judge" Thomas Head presided in the matter in the district court. Judge Head, at the time, was the presiding judge for the 12th Judicial Circuit of Alabama.

Petitioner was fined only $100.00, upon petitioner's district court conviction. Additionally, the first Circuit Court Jury Trial de novo, failed to return a verdict in the harassment charge. However, upon conviction in the retrial, Petitioner was immediately imprisoned and served 21 days before the judge issued petitioner an appropriate appeal bond, see also *United States v. Don Sigaelman,* cite omitted.  Contrary to the Alabama Rules of Criminal Procedure Rule 7.2 (c) and the U. S. Fourteenth Amendment, 14, petitioner was denied constitutional rights while others charged with the same offense are routinely released pending appeal. Next, petitioner was also charged by complaint with criminal mischief third degree in conjunction with the harassment charge. The district court imposed a $25.00 fine and $10.00 restitution in Criminal Mischief offense. In the trial de novo to the circuit court, criminal mischief conviction  imposed a sentence of 180 days with 30 to serve,  $1717.00 in fines and fees. The same facts and circumstances existed in both trials; furthermore, both "circuit judges" heard the same testimony and evidence.    The United States Magistrate herein assigned is also assigned the criminal mischief Habeas Petition, Case No. 2:06cv061-ID.  In certain situations, it is permissible to supplement record in a case with evidence from another case which was not considered by the district court, *Jones v. Thigpen,* 992 F2d. 1548 (11th Cir. 1993). Petitioner respectfully requests his habeas petition 2:06cv061-ID is consolidated with his case here. Issues of cruel and unusual punishment and disproportionate sentences maybe reviewed under *Solem v. Helm,* 463 U. S. 277, 103 S. Ct, 3001, 77 L. Ed. 637 (1983). *Solem* established a general principle of proportionality under the Eight Amendment and declared a three-factor test: (1) the gravity of the offense and the harshness of the penalty;(2) the sentences imposed on other criminals in the same jurisdiction; (3) the

sentences imposed on other criminals in other jurisdiction. In the jurisdiction of petitioner's conviction, no other defendant has been held to petitioner's sentencing for harassment charge under the circumstances. Petitioner is unable to find other criminal defendant in other jurisdictions required to undergo the sentence imposed. In *Bordenkircher v. Hayes*, 434 U. S. 357, 54 Led. 2d 604, 98 SCt. 663 (1978), the Supreme Court held: "A trial court may not use the sentencing process to punish a defendant, notwithstanding his guilt for exercising his right to receive a full and fair trial. (2 where trial court imposes lengthy sentence out of personal spite and in retaliation for defendants assertion of his statutory rights, resentencing is required. Imposition of consecutive rather than concurrent sentences is issue of law subject to plenary review, *U. S. v. Perez*, 956 F2d. 1098 (11th Cir. 1992). The Eighth Amendment of the U. S. Constitution, provide, excessive bail shall be required, nor excessive fines imposed, or cruel and unusual punishments inflicted. Clearly, the sentence is disproportional to the gravity of the crime. Petitioner is unable to find a single case, under these facts, where a body nudge to an initial aggressor after a battery merits 60 days hard labor in county jail; fines and fees exceeding $2800.00; two years probation, and anger management courses. Because Petitioner's sentence is cruel and unusual punishment, the issue is actual or arguably meritious under clearly established federal law as established by the Unites States Supreme Court, or is unreasonable determination of the facts in light of the record evidence, *Williams v. Taylor*, 529 U. S. 362 (2002); *Strickland v. Washington*, 466 U.S. 687, 80 L.Ed. 2d 674, 104 S. Ct. 2052 (1984), *Solem v. Helm*, 463 U. S. 277, 103 S. Ct, 3001, 77 L. Ed. 637 (1983) *Bordenkircher v. Hayes*, 434 U. S. 357, 54 Led. 2d 604, 98

SCt. 663 (1978); *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

## CONCLUSION

Because the Magistrate failed to address several of the Petitioner's claims for Federal Review, this Honorable Court must reject the Magistrate's Recommendation. Furthermore, because the verdict is contrary to law or an unreasonable application of the facts in light of the evidence; petitioner's conviction for harassment must be dismissed. Additionally, the Magistrate's Recommendation provides detailed argument by which the petitioner may prevail; nevertheless, appellate counsel's *Anders* brief was obligated to point to all actual or arguable issue(s).

It is so prayed and respectfully submitted in good faith.

Done this the 19th day of May 2008.

Jeffery Baker Jr., Petitioner
1357 County Road 3348
Brundidge, Alabama 36010
334-722-0331

## CERTIFICATE OF SERVICE

I hereby certify that I have this day, May 19, 2008 served the forgoing Objection to the

Magistrate's Recommendation on the following by United States mail with postage pre-

paid and affixed thereto and properly addressed as follows:

Mr. Cecil G. Brendle, Jr.,
Assistance Attorney General
11 South Union Street
Montgomery, Alabama 36130

Jeffery Baker Jr,

Jeffery Baker Jr.,
1357 County Road 3348
Brundidge, Alabama 36010



Ms. Debra P. Hackett, Clerk
U. S. District Court
P. O. Box 711
Montgomery, Alabama 36101-0711